Donna LEE, Appellant,

v.

**SAFEMATE LIFE INSURANCE COMPANY, Appellee.**

No. 08–86–00215–CV.

Court of Appeals of Texas, El Paso.

Aug. 19, 1987.

Rehearing Denied Sept. 16, 1987.

Michael C. Crowley, Christie, Berry & Dunbar, El Paso, for appellant.

Richard Yetter, El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and WOODARD, JJ.

## OPINION

WOODARD, Justice.

The trial court granted Defendant's motion for judgment notwithstanding the verdict for want of a cause of action on all matters, except it confirmed the jury's denial of attorney's fees on the issue of bad faith and harassment. We reverse and render, except for the matters of attorney's fees.

The jury found that the Defendant breached its duty of good faith and fair dealing and that it engaged in unfair acts

or practices in handling the Plaintiff's claims.

In August of 1983, Plaintiff obtained an automobile loan from a credit union and purchased disability insurance from the Defendant, securing the payment of the loan. In September of 1983, Plaintiff became ill from thrombophlebitis. She terminated her employment without pay and applied to the Defendant insurance company for the loan payments she was unable to make. Her claim was denied on the policy liability exception of a preexisting condition. Plaintiff denied the preexisting condition and brought suit under Tex.Ins.Code Ann. art. 21.21, sec. 16, and alternatively for breach of good faith and fair dealing. The jury awarded $10,300.00 actual damages, $20,-000.00 exemplary damages, and attorney's fees. The jury further found the suit was not groundless or brought in bad faith, or for the purpose of harassment.

In Special Issue No. One, the jury found the insurance company intentionally breached its duty of exercising good faith and fair dealing in the handling of the Plaintiff's claims by (1) failing to use due diligence in attempting to determine the nature of her loss, and (2) failing to deal in good faith with her in regard to her insurance claim, and that these were proximate causes of her damages.

The standard of reference given this issue was the instruction setting out the Unfair Claim Settlement Practices Act, Tex.Ins.Code Ann. art. 21.21–2, sec. 2, with its subsections thereunder, stating their violations constitute unfair settlement practices. Section (c) states:

> Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policies; ....

Section (d) states:

> Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear; ....

The court instructed that a violation of this Act could be evidence of bad faith. The Defendant objected that there was no definition of the words "good faith."

■ A cause of action for breach of the duty of good faith and fair dealing exists when there is no reasonable basis for denial of a claim or delay in payment, or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay. *Arnold v. National County Mutual Fire Insurance Company,* 725 S.W.2d 165 (Tex.1987).

■ If Sections (c) and (d) are considered to some degree to be a definition of good faith, the Defendant's objection of "no definition" is too general. *Bellefonte Underwriters Ins. Co. v. Brown,* 663 S.W.2d 562 (Tex.App.—Houston [14th Dist.] 1983), aff'd in part, rev'd in part, 704 S.W.2d 742 (Tex.1986); *Motor 9, Inc. v. World Tire Corporation,* 651 S.W.2d 296 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). If Sections (c) and (d) are not considered to be definitions of good faith, then it was incumbent upon the Defendant to request a definition in substantially correct form. Rule 279, Tex.R.Civ.P.; *State v. Harrington,* 407 S.W.2d 467 (Tex.1966). The objection was waived.

In Special Issue No. Two, the jury found that the Defendant negligently breached its duty of good faith and fair dealing by (a) engaging in unreasonable and unjustified delays in paying loss, (b) by failing to use due diligence in attempting to determine nature of loss, and (c) failing to deal in good faith. The Defendant objected to the absence of definitions of "due diligence" and "good faith," without more, and the same reasoning and rulings applied to the objections on Special Issue No. One apply to these objections. The jury found in Special Issue No. Four that the insurance company engaged in an unfair act or practice in the handling of Plaintiff's claim by (1) engaging in unreasonable and unjustified delays, (2) failing to use due diligence, and (3) failing to deal in good faith. Article 21.21, sec. 16(a), makes three types of conduct actionable:

> (1) Any activity declared in Article 21.21, sec. 4, to be an unfair method of competition and unfair and deceptive trade or practice;
> (2) Any activity declared in the rules and regulations lawfully adopted by the State

Board of Insurance under Article 21.21 to be an unfair method of competition and unfair and deceptive trade or practice; and

(3) Any activity defined in Tex.Bus. & Com.Code Ann. sec. 17.46 (Vernon Supp. 1968) (Deceptive Trade Practice Act) as an unlawful deceptive trade practice.

*Chitsey v. National Lloyds Insurance Company*, 738 S.W.2d 641 (1987). Article 21.21, sec. 16(b), provides that a successful plaintiff may obtain treble damages, plus court costs and attorney's fees.

Article 21.21, sec. 4, contains eight subsections defining unfair practices in the business of insurance, but none of them pertain to unfair claims settlement practices. Plaintiff claimed that Defendant violated Article 21.21, sec. 4(1), but that subsection pertains to false advertising and there is nothing therein that prohibits any conduct alleged by the Plaintiff. Therefore, nothing in Article 21.21, sec. 4, supports a judgment for the Plaintiff based on the jury's answer to Special Issue No. Four.

Plaintiff alleges that Defendant's conduct violated State Board of Insurance Orders Nos. 41060, adopted June 4, 1982, and 27085, adopted May 17, 1974. Board Order No. 41060 seeks to define and prohibit unfair acts or practices in the insurance industry and was adopted by the Board under Article 21.21. Board Order No. 27085 deals with unfair acts or practices in the settlement of claims. Contrary to the Plaintiff's assertion, a violation of Board Order No. 27085 is not a per se violation of Article 21.21, sec. 16. Board Order No. 27085 was adopted under the provisions of Tex.Ins.Code Ann. art. 21.21–2 (Vernon 1981), entitled "Unfair Claim Settlement Practices Act." A violation of Board Order No. 27085 is not necessarily a violation of Article 21.21, sec. 16, because Article 21.21, sec. 16(a), only prohibits practices declared to be unfair or deceptive in "rules or regulations lawfully adopted by the Board *under this Article....*" [Emphasis added.] The phrase "this Article" clearly refers to Article 21.21, not Article 21.21–2, the provision under which Board Order No. 27085

was adopted. Therefore, a claim by Plaintiff that Defendant violated Board Order No. 27085 cannot support a judgment in her favor.

The acts and practices prohibited in Board Order No. 41060 do not include any that relate to the settlement of claims. It merely refers back to the Insurance Code and other Board orders. There is nothing in Board Order No. 41060 which would support a judgment for the Plaintiff based on the jury's answer to Special Issue No. Four. This is true even though the Supreme Court held to the contrary in *Chitsey*, supra. There is nothing in *our record* regarding the incorporation in Board Order No. 41060 of the provisions of another Board order requiring reasonable investigation of claims.

Likewise, any conduct of the Defendant in handling the Plaintiff's claim does not fall within the proscribed practices listed in Tex.Bus. & Com.Code sec. 17.46 (Vernon Supp.1986). The so-called "laundry list" of Section 17.46(b) defines twenty-three types of "false, misleading or deceptive acts or practices." None of these prohibit or even deal with claim settlement practices. Therefore, nothing in Section 17.46 can serve as the basis for judgment for the Plaintiff based on Special Issue No. Four.

Plaintiff did not allege a valid cause of action against the Defendant under Article 21.21, sec. 16. Therefore, attorney's fees and treble damages were properly denied, and a j.n.o.v. in favor of the Defendant in these respects was properly granted.

Plaintiff's allegations as to Defendant's conduct seem to come under the provisions of Article 21.21–2 and Board Order No. 27085. However, Texas courts have held that Article 21.21–2 merely authorizes the State Board of Insurance to investigate and impose sanctions, and does not give an individual a private cause of action against an insurer. *Cantu v. Western Fire and Casualty Insurance Company, Ltd.*, 716 S.W.2d 737 (Tex.App.—Corpus Christi 1986), writ ref'd n.r.e. per curiam, 723 S.W.2d 668 (Tex.1987).

In Special Issue No. Five, the jury awarded $5,300.00 to extinguish the Plain-

tiff's debt on the car, $4,000.00 for the loss of use of the car, and $1,000.00 for mental anguish and emotional distress. No showing of physical injury is required as a prerequisite for establishing damages for mental anguish, as the jury found an intentional tort in Special Issue No. One. *Farmers and Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918 (Tex.1981).

█ The jury awarded $20,000.00 in exemplary damages. The intentional finding would support this award. *The City of Gladewater v. Pike*, 727 S.W.2d 514 (Tex. 1987). Exemplary damages and mental anguish damages are recoverable for a breach of duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions. *Arnold*, supra. The Defendant alleged no evidence to support a judgment in favor of the Plaintiff. In considering a "no evidence" legal insufficiency point, we consider only the evidence which tends to support the jury's findings, and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965). There is testimony to the effect that on August 10, 1983, the Plaintiff obtained financing for the purchase of an automobile from the Ysleta Teachers Federal Credit Union. The loan required her to obtain credit life and disability insurance for the life of the loan. She purchased such a policy on the same day from the Defendant. Payment of the premium was part of the loan monies which was also made on August 10, 1983. On September 6, 1983, Plaintiff first experienced disability and on September 9, 1983, she was hospitalized for the rest of the month. She was diagnosed as having thrombophlebitis on September 21, 1983. Prior to this diagnosis, she had seen her treating physician as late as August 8 and August 29, 1983, and had shown no signs suggestive of thrombophlebitis. Because of her illness, she was required to leave her job without pay. Following her termination of employment, she made application in late September, 1983, to the Defendant for payment of the loan payments she was unable to make. Plaintiff was initially informed that her claim was denied due to a "preexisting condi-

tion." She was told to obtain more medical information, which she did. The Plaintiff tried to follow-up the status of her claim several times, directly or through her family, but was unable to obtain further information. In January, 1984, Defendant again denied Plaintiff's claim on the ground of a "preexisting condition," even though all the medical information in the possession of the Defendant indicated no existence of said condition. Whenever Plaintiff and/or Plaintiff's family contacted or attempted to contact the Defendant regarding handling of the Plaintiff's claim and its determination not to pay, they were given evasive or no answers. During the period of time from October, 1983, to February, 1984, Defendant contacted Plaintiff's physicians, without her knowledge, seeking information regarding Plaintiff's alleged "preexisting condition." These inquiries were made after the Defendant had made its determination that Plaintiff had such a condition. The responses of Plaintiff's physicians were unequivocal and unambiguous; she had no history of phlebitis before September 9, 1983. Nevertheless, Defendant once again denied Plaintiff's claim in January of 1984. At the trial of this cause, Defendant presented no evidence that Plaintiff ever had a "preexisting condition" of phlebitis. Defendant never requested an independent medical examination. Plaintiff testified that, following the denial of her claim by Defendant, she was unable to make further payments and the car was repossessed. At that time, her debt was approximately $5,300.00. She also testified she lost the use of her car after repossession in the fall of 1984. She testified the daily rental value for the use of the car was $10.00. She, and members of her family, testified that she underwent severe mental and emotional distress caused by Defendant's handling of her claim.

There is sufficient evidence to support a judgment for the Plaintiff. Defendant's counterpoints are overruled, including the allegation that the suit was groundless and was brought in bad faith. The evidence,

jury, judge and subsequent rulings of the Supreme Court have established otherwise.

The judgment of the trial court is reversed and judgment is hereby rendered for the Plaintiff, except for matters of attorney's fees, in accordance with this opinion.