**PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Dale Lynn BOMAN and Bridgewater–Calvin Insurance Associates, Inc., Appellees.**

No. 9659.

Court of Appeals of Texas, Texarkana.

Oct. 17, 1989.

Rehearing Granted Nov. 14, 1989.

Mark W. Thayer, Barry G. Flynn & Associates, Houston, for appellant.

James R. Spradlin, Spradlin, Mulloy, Rose, Best & Spradlin, Donald W. Rogers, Jr., Houston, for Dale Lynn Boman.

Thomas Fox, Prappas & Eidman, Houston, for Bridgewater Calvin Ins. Associates, Inc.

BLEIL, Justice.

This is an appeal in an action based on the Deceptive Trade Practices Act, Tex. Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987), and the Unfair Claims Settlement Practices Act, Tex.Ins.Code Ann. art. 21.21–2 (Vernon 1981), arising out of Progressive County Mutual Insurance Company's denial of Dale Boman's claim for damages to his motorcycle, which he made based upon an insurance policy issued by Progressive. Boman sued Progressive and Bridgewater–Calvin Insurance Associates, Inc., the insurance agency. Boman did not file suit to recover on the insurance agreement, but proceeded on the basis that the failure to pay his claim, and the continued malicious refusal to pay it, constituted a violation of the Deceptive Trade Practices Act and the Unfair Claims Settlement Practices Act.[1] Progressive cross-claimed against Bridgewater–Calvin for indemnity. In a trial before the court, Boman obtained judgment against Progressive for $9,661.00 in actual damages, trebled to $28,983.00, $40,000.00 in punitive damages, and $25,-000.00 in attorney's fees. The judgment totally absolved Bridgewater–Calvin.

The critical issues presented on this appeal are whether sufficient evidence exists to support the trial court's findings that Progressive engaged in deceptive trade practices and unfair claims settlement practices. We determine that insufficient evidence exists to support the findings and reverse.

At relevant times Boman was an officer in the solo motorcyclist division of the Houston police department. In connection with that work, he owned and equipped a 1984 Honda Goldwing motorcycle, which was insured by another insurance company. He used this motorcycle for regular police business and for escorting other vehicles through traffic. He earned extra money in the escort work, which he considered to be a second job.

In 1986 he decided that he needed another motorcycle to use for his police work. In the middle of August 1986, he purchased a 1986 Honda Goldwing. In order to purchase the motorcycle, Boman borrowed money from the Houston Police Federal Credit Union, which required Boman to obtain full insurance coverage on the motorcycle. On August 18 Boman applied for insurance through Bridgewater–Calvin.

Specifically, he saw and spoke with Lila Musterman, explaining that he wanted full coverage on the new motorcycle. She informed him that he could not get full coverage on the motorcycle if it was used as a police motorcycle. Progressive did not insure motorcycles used for business purposes. Boman and Musterman understood that he was not then using the motorcycle for business purposes and that if he bagan to use the motorcycle for business purposes, he would not have coverage from Progressive. When he applied, he indicated that the new motorcycle was not to be used in business. At the top of the printed application form was typed these words: "Bowman (sic) is a Police Patrolman, but he has an 84 Honda Goldwing

---

1. The Unfair Claims Settlement Practices Act does not purport to give individuals a private cause of action. Rather, it authorizes the State Board of Insurance to investigate and impose sanctions for unfair claims settlement practices. *Cantu v. Western Fire & Casualty Ins. Co.,* 716 S.W.2d 737 (Tex.App.—Corpus Christi 1986), *writ ref'd n.r.e. per curiam,* 723 S.W.2d 668 (Tex.1987); Tex. Ins. Code Ann. art. 21.21–2, §§ 4, 6 (Vernon 1981). Even if the trial court erred in allowing recovery in part based upon this article, that point is neither before us on appeal nor germane to our decision that the evidence is insufficient to support the judgment.

1200CC Motorcycle that he uses for business. This one is used for pleasure only."

On the first page of Progressive's motorcycle insurance application form, immediately following the legal description of the vehicle, is the following notation:

NOTE: Is this Cycle kept in a Garage or Chained in a Carport at your Residence? ___Yes ___No (If No—Risk is Not Eligible.)

On the bottom of the second page of the application, it provides that the applicant must read, initial and sign, and that failure to do so will result in cancellation. There is a certificate that reads, "My cycle is kept in a garage or chained to the structure of a carport at my residence." After that certificate and at the end of the application form appears the signature "Dale L. Boman." The application is dated August 18, 1986, and was admitted in evidence. However, Boman testified that he did not remember signing the application, although the signature looked like his. Because he could not remember signing it, he said that it was not his signature. Boman paid the first installment on the policy by giving a check to Bridgewater–Calvin for $166.00 on August 18, 1986.

Meanwhile, Boman took steps to prepare his new motorcycle for use as a police vehicle. On August 12 he had it repainted, bought light mountings for fog or pursuit lights, and bought police-type lights for the motorcycle. Because Boman knew that when he began using the motorcycle as a police vehicle for business the only insurance he could probably get would be liability and that he could not be covered by a policy from Progressive, and further because he knew that the credit union required him to have full insurance coverage on the motorcycle, he determined to change the nature of his loan. Thus, on September 9, Boman went to the credit union and applied for a signature loan, obtained a release of the collateral from his earlier loan, and signed a new note, which was guaranteed by certain of his friends. About that time, Boman notified Bridgewater–Calvin that he had started using the motorcycle for business, and he was in-formed that Progressive would not insure it at that time.

On September 22, 1986, Musterman sent a letter on behalf of Bridgewater–Calvin to Progressive, saying that she had previously mailed an application for motorcycle insurance for Dale Boman. She said that Boman had called and did not want the coverage, that he did not need the policy because he had taken out a signature loan. She asked that the request for an insurance policy be disregarded and that the application be mailed back. Apparently not in response to Musterman's request, Progressive sent a notice to Boman, Bridgewater–Calvin, and the Houston Police Federal Credit Union on September 23, 1986, informing them that the policy was to be canceled effective October 5, 1986. This cancellation was sent on the basis that Boman did not satisfactorily assure Progressive that the motorcycle would be garaged or chained to the carport.

On October 2, 1986, while Boman was en route to act as a police escort for a funeral procession, he had a collision with a pickup truck. The collision occurred when Boman attempted to pass the truck and the truck turned left in front of him. Boman was injured and the motorcycle was demolished.

In determining whether sufficient evidence supports the trial court's findings, it is helpful to detail the key findings upon which the trial court based its judgment. The trial court found that Boman sustained injuries to his person and damage to his motorcycle on October 2, 1986, while covered by a policy of insurance issued by Progressive. The court determined that Boman's injuries required in excess of $2,500.00 medical care—the limit under the personal injury protection afforded by the policy—and that the property damage less the deductible was $7,161.00. Thus, the trial court found total actual damages to be $9,661.00.

With respect to liability for deceptive trade practices and unfair claims settlement practices, the trial court found the following matters: after the loss Progressive took a statement about the event "for

the purpose of seeking out a policy defense, and not for the purpose of entering into good faith settlement negotiations," and that this was a general business practice of Progressive; and, Progressive engaged in an unconscionable course of action and took grossly unfair advantage of Boman in refusing to honor his property damage claim. The trial court further found that Progressive committed further "bad faith claims practice" because it knew or should have known that it had no reasonable basis to deny the claim; and that Progressive's bad faith claims practice "was done maliciously, calliously (sic) and with conscious indifference and reckless disregard to the rights" of Boman.

The court proceeded to find $40,000.00 punitive damages and $25,000.00 attorney's fees for trial, with provisions for lesser amounts of attorney's fees for the stages in the appellate process. The court further found that Bridgewater–Calvin did not participate in the decision to deny Boman's claim and did not misrepresent anything.

We now turn to a consideration of whether there is sufficient evidence to support the court's findings which establish the basis for the judgment. In this consideration, we consider and weigh all the evidence in determining whether the evidence is sufficient. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). And, when we reverse a judgment because the evidence is insufficient to support it, we detail the relevant evidence and point out the basis for our determination that the evidence is insufficient. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986).

We have already detailed much of the evidence before the trial court. We now scrutinize the evidence which might support findings of Progressive's improper motive in taking a statement from Boman; unconscionable course of action taking grossly unfair advantage of Boman; unreasonably denying his claim; and acting maliciously, callously, and with conscious indifference and reckless disregard to Boman's rights. Before looking further at the evidence, however, it is best to look at Progressive's bases for its denial of the claim.

Progressive initially denied Boman's claim because the policy required that (1) when not in use, the motorcycle be kept in a garage or chained to a carport structure; (2) failure to comply with this requirement made the policy null and void; and (3) Boman neither kept the cycle in a garage nor chained to a carport; rather, he kept it in the parking lot of his apartment. Subsequently, Progressive answered the suit in part by claiming that the business use of the cycle was a noncovered use because the application was for recreational use of the cycle only and that Boman knew he would not be covered for use of the cycle in police work. To better consider Progressive's mental state in denying the claim, it is appropriate to look at the law pertaining to a failure to comply with a certification such as the one in the policy application.

Ordinarily, five elements must be pled and proved before an insurer may avoid payment on an insurance policy because of misrepresentations on an application for insurance: (1) a representation by the insured, (2) falsity of the representation, (3) reliance thereon by the insurer, (4) intent to deceive by the insured, and (5) materiality of representation. *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980); *Sharp v. Lincoln American Life Ins. Co.*, 752 S.W.2d 673, 675 (Tex.App.—Corpus Christi 1988, writ denied). The fifth element, the materiality of the representation, has been construed to mean the materiality of the representation to the insurer's decision to issue the policy, *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28 (Tex.1978), *citing* Tex. Ins.Code Ann. art. 21.16 (Vernon 1981), as opposed to a later suspension of coverage of a contract entered into without misrepresentations when a later change of circumstances causes a representation to become untrue, thus causing the insured to fall out of compliance with a term of the contract. In that situation, the change in circumstance must be material to the risk that actually caused the loss before the insurer can deny coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex.1984). A warranty is a statement made by the in-

sured that is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless the statement is literally true. *Lane v. Travelers Indemnity Company,* 391 S.W.2d 399 (Tex.1965). Bridgewater–Calvin might reasonably have believed that Boman made certain warranties to it that he would do certain things, and that his failure to comply with the warranties caused the policy to be void.

■ These authorities indicate that in a suit to recover on the policy, Progressive conceivably would have a legally persuasive defense on two bases: (1) that the policy was void because of a misrepresentation on the application with regard to where the motorcycle would be stored; and (2) that although initially covered by the policy, when the circumstances with regard to the representation that the motorcycle was not to be used for business purposes materially changed, i.e. when Boman began to use the cycle for business, coverage ceased. Because this was not a suit to recover on the policy, Progressive could not successfully defend the suit on these grounds. However, there is ample evidence before us to demonstrate that Progressive's denial of Boman's claim appears to be patently reasonable. This is especially so when all of the circumstances known to Progressive at the time the claim was denied are considered, including the reasonableness of a belief that the policy was void, Boman's request that he not be covered any more by the policy, and the reasonableness of a belief that, because the accident occurred during a business use of the motorcycle, the policy would not cover the event out of which the claim arose. Thus, the evidence is not sufficient to show that Progressive had a mental state which could be labeled unconscionable, one of bad faith or one that was malicious, callous, or with conscious and reckless disregard to the rights of Boman.

Boman argues that there is evidence that the application was forged, thus showing a clear evil intent. On the application form there were two places where the applicant was required to sign concerning coverage. One was to reject uninsured/underinsured motorists coverage; the other was to reject personal injury protection. Although Boman's name was signed in those two blanks, he denied that he had signed them and the handwriting was different from the signature on the application which looked like his handwriting. Boman essentially said that the signature on the application looked like his, but that he did not remember signing any application, and for that reason he denied that the signature was his. Accepting this statement, there nevertheless is no evidence that either defendant forged the signature. Furthermore, nothing concerning the signature on the policy forms a basis for the recovery allowed.

Boman further maintains that Progressive committed an unfair claims settlement because it took a statement from him after the accident solely to establish a policy defense and not to enter into good faith settlement negotiations. Although the trial court found this to be a fact, the evidence is insufficient to support such a finding. Additionally, there are legal problems with Boman's position. A cause of action for breach of the duty of good faith exists when there is no reasonable basis to deny a claim or delay its processing. *Lee v. Safemate Life Ins. Co.,* 737 S.W.2d 84 (Tex. App.—El Paso 1987, writ dism'd).[2] Here, there was a reasonable basis to deny the claim. Article 21.21–2, § 2(d) sets forth as a prohibited practice: "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted

---

**2.** At first blush there appears to be a conflict between this holding and that of *Cantu,* 716 S.W.2d 737. However, there is none. In both cases the court noted that Article 21.21–2 does not give an individual a private cause of action against an insurer. In the latter, although recovery was sought under Article 21.21–2 and *alternatively* for the nonstatutory cause of action for breach of good faith and fair dealing, recovery was allowed only under the alternative grounds. Breach of the common law duty of good faith and fair dealing is actionable. *Arnold v. National County Mutual Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). Based upon the pleadings and the trial court's findings of fact, it does not appear that recovery was sought or allowed for violation of the common law duty of good faith and fair dealing.

in which liability has become reasonably clear." Nothing in this provision or in the Unfair Claims Settlement Practice Act purports to make an insurer's conduct actionable when it does not enter into "good faith settlement negotiations" unless its liability is reasonably clear.

We conclude that the evidence is wholly insufficient to establish any of the findings by the trial court which support the judgment entered. Since we conclude that the evidence is insufficient to support the judgment, the cause must be reversed and remanded for a new trial. Thus, the issues relating to the reasonableness of attorney's fees and Progressive's right of indemnity against Bridgewater–Calvin need not be reached on this appeal. However, the propriety of allowing recovery of treble damages under the Deceptive Trade Practices Act and punitive damages should be addressed so that, in the event of retrial, the matter will not need further resolution on appeal.

 A prevailing party is not entitled to recover both treble damages under the Deceptive Trade Practices Act and punitive damages for the same wrongful acts. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361 (Tex.1987). Progressive correctly urges that both the treble damages and punitive damages should not have been allowed.

We reverse the trial court's judgment and remand the case to the trial court.

## ON MOTION FOR REHEARING

Bridgewater–Calvin Insurance Associates, Inc. legitimately complains of our reversal of the take-nothing judgment against it. Both Boman and Progressive sought relief against Bridgewater–Calvin. Boman sued Bridgewater–Calvin as a party responsible for having caused him damages; Progressive sought contribution and indemnity. The trial court denied any recovery against Bridgewater–Calvin.

Boman did not appeal from the take-nothing judgment against him on his claims against Bridgewater–Calvin and, thus, that judgment is final. We should have af-firmed that part of the judgment and erred in failing to do so.

Bridgewater–Calvin further complains that we should have ruled on Progressive's only point of error against it. We agree and now address this issue.

On appeal, Progressive's only complaint against the trial court's judgment that it take nothing against Bridgewater–Calvin was that, *as a matter of law*, it was entitled to indemnity. There is evidence which supports the trial court's failure to find that Progressive is entitled to indemnity. Indeed, Progressive has not pointed out any evidence which would establish that it is entitled, as a matter of law, to be indemnified by Bridgewater–Calvin. Thus, we overrule Progressive's only claim of error in this regard.

Therefore, we grant Bridgewater–Calvin's motion for rehearing and, insofar as the trial court's judgment provides that both Progressive and Boman take nothing against it, we affirm the trial court's judgment; in all other aspects the judgment is reversed and remanded to the trial court.