**CNA INSURANCE COMPANY,**
Appellant,

v.

**Eric SCHEFFEY, M.D., Appellee.**

**No. 6–91–081–CV.**

Court of Appeals of Texas,
Texarkana.

March 31, 1992.
Rehearing Denied April 14, 1992.

Ross Citti, Mills, Shirley, Eckel, Bassett, Houston, Richard A. Simpson, Ross, Dixon & Masback, Washington, D.C., John R. Mercy, Atchley, Russell, Waldrop, Hlavinka, Texarkana, for appellant.

W. James Kronzer, Law Offices of W. James Kronzer, James R. Spradlin, Spradlin, Mulloy, Rose, Best, Spradlin, Houston, C.L. Ray, Austin, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

CNA Insurance Company[1] appeals a judgment for approximately $34 million in damages rendered against it because it did not pay Eric Scheffey, M.D., promptly and fairly for medical treatment he gave to CNA insureds, and because it disparaged Scheffey's professional reputation by making false and misleading representations of fact.[2] CNA raises several issues that require our determination on appeal. We must resolve whether defensive matters were improperly excluded from evidence, whether Scheffey has standing to sue under the insurance code, and whether a motion to recuse the trial court judge was properly denied.[3] We resolve these issues in favor of CNA and reverse.

---

1. CNA asserts the following relative to its identity in these proceedings:

   "CNA Insurance Company" is not a legal entity, nor is it an assumed name, trade name, fleet name, registered trademark or registered service mark. The fleet name "CNA Insurance Companies" refers to a group of insurance companies, including Continental Casualty Company and its subsidiaries. CNA Financial Corporation, which is not an insurance company, is Continental Casualty's parent corporation. CNA Financial Corporation was never properly joined as a party to this case. The "CNA employees" whose actions are at issue in this case are actually employed by Continental Casualty Company.

   For simplicity's sake, we refer to the appellants as CNA.

2. Other than the action being labeled as one sounding in tort, its exact nature is difficult to describe. Scheffey originally filed a slander and libel case. However, just before trial, he amended his pleadings to abandon those causes of action, claiming instead that CNA violated a duty of good faith and fair dealing it owed Scheffey, and that it violated Tex.Ins.Code Ann. art. 21.21 (Vernon 1981 & Supp.1992) and the Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Vernon 1987 & Supp.1992). Thereafter, the deceptive trade practices claims were severed from the case and were not tried with this case. Also severed were causes of action raised in the amended pleadings alleging tortious interference with business relationships and conspiracy to interfere with business relationships.

3. Other issues which are raised are either made moot or are resolved by our decision.

## FACTUAL BACKGROUND

CNA is the workers' compensation insurance carrier for various employers. Scheffey is an orthopedic surgeon who practices medicine in Harris County. Scheffey's practice includes treatment of injured workers whose employers provided workers' compensation insurance coverage through CNA.

On July 10, 1989, Scheffey filed a slander and libel action in which he claimed that CNA employees falsely spread information that Scheffey had been arrested for selling cocaine and that this information had adversely affected his medical practice. Just before trial, Scheffey filed an amended petition in which he abandoned his claim for slander and libel and raised new claims. He claimed that he was a third-party beneficiary and consumer under the policies of insurance that CNA issued to employers; that CNA had exercised bad faith in the settlement of claims and had failed to pay and settle claims which he submitted after treatment of workers whose employers carried workers' compensation insurance with CNA; and that CNA had breached its contract of insurance with the insured companies and the companies' workers, which also amounted to a breach of contract with Scheffey. Scheffey also maintained that CNA violated various insurance rules and regulations and Article 21.21 of the Insurance Code,[4] entitled Unfair Competition and Unfair Practices; that CNA violated several provisions of the Texas Deceptive Trade Practices Act[5] by engaging in false, misleading or deceptive acts or practices; and that it breached various express or implied warranties and engaged in an unconscionable course of action, all of which were producing causes of damages to Scheffey.

## EXCLUSION OF DEFENSIVE EVIDENCE

We first consider whether defensive matters were erroneously excluded from evidence. Scheffey's suit was premised on an allegation that CNA employees had falsely informed others that Scheffey had been arrested for selling cocaine, which disparaged Scheffey's professional reputation as a physician and caused severe economic loss to his medical practice. CNA's defensive theory was that Scheffey's own personal and professional misconduct, rather than the conduct of any of CNA's employees, caused Scheffey's professional reputation and business to suffer. Also, it sought to show that, based on known facts, the CNA employees did not act in bad faith when they may have commented that Scheffey had sold cocaine.

■ Ordinarily, the exclusion of evidence is a matter within the discretion of the trial court. *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 389 (Tex.1965). Here, however, the trial court excluded most of the evidence which was offered to establish CNA's defenses.[6]

4. Tex.Ins.Code Ann. art. 21.21 (Vernon 1981 & Supp.1992).

5. Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Vernon 1987 & Supp.1992).

6. Among other things, the trial court excluded evidence that Scheffey had a poor professional reputation in the communities of Houston and Baytown; that Scheffey had pled guilty to possession of cocaine; that Scheffey had admitted to being a cocaine user; that Scheffey had distributed cocaine to house guests; that Scheffey's medical license had been revoked, with the revocation suspended for ten years pending drug rehabilitation; that the Texas Medical Association's newsletter published notice of the revocation of Scheffey's license to practice medicine; that Scheffey's medical privileges at three Houston hospitals had been revoked; that numerous medical malpractice suits had been filed against Scheffey, some alleging that Scheffey had treated them while he was under the influence of cocaine—in one instance causing a patient's death; that Scheffey had been investigated by the Texas State Board of Medical Examiners concerning allegations that he had performed unnecessary surgery and charged excessive fees; that an article concerning Scheffey's drug problems, arrests, malpractice suits, and medical license suspension appeared on the front page of the Sunday, May 15, 1988, *Houston Post* entitled "Surgeon arrested for drugs 5 days after patient died"; that Jackie DeLozier, office manager for Scheffey, had knowledge of Scheffey's arrest and of articles in the *Baytown News* about Scheffey's arrest for cocaine possession; that Sue Towne, management consultant for Scheffey, had knowledge of Scheffey's arrest for possession of cocaine and the *Houston Post* article

■ The trial court ruled inadmissible all evidence about events relating to Scheffey before June 28, 1989, when CNA employee Julie Lar reportedly told one of Scheffey's employees that Scheffey had been arrested for selling cocaine. In effect, the trial court ruled that none of Scheffey's actions before that date were relevant to his reputation or medical practice.

It is unnecessarily cumbersome to look at each instance in which the trial court excluded evidence.[7] In most instances, the trial court improperly excluded relevant evidence, although some of the errors may not have been preserved procedurally. However, we look at the trial court's numerous evidentiary rulings.[8] Time after time the court ruled, in effect, that no evidence about matters touching Scheffey's professional or personal life or reputation which occurred before CNA allegedly disparaged his reputation late in June 1989 was relevant to his claim for damages. The trial court excluded all such evidence.

In this regard the trial court held an erroneous view of the evidence. Relevant evidence is defined as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CIV.EVID. 401.[9] All relevant evidence is admissible, except as otherwise provided by the constitution, by statute or by rules prescribed by the Texas Supreme Court. TEX.R.CIV.EVID. 402. The excluded evidence generally is logically relevant to an analysis of the cause of Scheffey's damages and their extent. It also is relevant to the mental state of CNA's employees.[10] On appeal, Scheffey's attorney concedes that the excluded evidence may well have some logical relevance.

Scheffey's appellate attorney maintains, however, that CNA failed to preserve this issue for review and also that the trial court may have excluded this evidence pursuant to TEX.R.CIV.EVID. 403 on the basis of unfair prejudice. We have already indicated that we decline to address specifically each item of evidence offered or to examine in detail the manner in which each item was offered. In announcing that all matters before June 1989 would be excluded from evidence, the court indicated an erroneous view of the law.[11] In many evidentiary rulings, the trial court effectively prevented CNA from presenting its defense.

---

about Scheffey; and that Joan Bates, business attorney for Scheffey, knew of Scheffey's arrest and guilty plea for possession of cocaine, the revocation of Scheffey's medical license, and Scheffey's loss of staff privileges at three Houston area hospitals before June 28, 1989.

7. There are twenty-four points of error claiming that the trial court excluded relevant evidence.

8. The essence of the position of Scheffey's trial attorney as to the evidence is reflected in the following exchange between Scheffey's attorney, James Spradlin, and the court:

> MR. SPRADLIN: I object, Judge, because our complaint arose in July of 1989 and her testimony is from July of 1989 forward to the present. So any inquiry prior to that is inmaterial (sic) and irrelevant to this jury.
> THE COURT: Sustained.

9. Because TEX.R.CIV.EVID. 401–403 all pertain to this issue, it is worthwhile to quote those rules.

**RULE 401. DEFINITION OF "RELEVANT EVIDENCE"**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**RULE 402. RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE**

All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is inadmissible.

**RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON SPECIAL GROUNDS**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

10. The mental state of the CNA employees was germane to the questions of punitive damages and CNA's good or bad faith in dealing with Scheffey.

11. The court further showed this view by sustaining various objections and by ruling, for example, that, "I will sustain the objection inso-

CNA preserved error for review in the trial court's exclusion of relevant evidence.

■ The trial court has the discretion to exclude evidence on the basis of unfair prejudice, despite its logical relevance. *First Southwest Lloyds Ins. v. MacDowell*, 769 S.W.2d 954, 958 (Tex.App.—Texarkana 1989, writ denied); *Missouri–Kansas–Texas R.R. Co. v. Alvarez*, 703 S.W.2d 367, 370 (Tex.App.—Austin 1986, writ ref'd n.r.e.). TEX.R.CIV.EVID. 403 specifically provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Scheffey's attorney argues on appeal that, while some of CNA's evidence may have

been admissible, it was properly excluded by the court, because in the exercise of its discretion it determined that the probative value was substantially outweighed by the danger of unfair prejudice.

Determining whether the trial court may have performed a Rule 403 balancing analysis and excluded evidence because its probative value was outweighed by the danger of unfair prejudice might be accomplished by considering one of the items of excluded evidence—a newspaper story featured on the front page of *The Houston Post*, entitled "Surgeon arrested for drugs 5 days after patient died."[12] This article

---

far as the relation of matters prior to June of 1989."

**12.** To eliminate any danger of unfair characterization, we quote the article:

Dr. Eric Heston Scheffey has served criminal probation for cocaine possession. He acknowledges he paid $1 million to the family of a woman who died on his operating table. The death occurred five days before his drug arrest.

Scheffey, 38, was sued 10 times for malpractice between Jan. 1, 1985, and Feb. 29, 1988.

He still is practicing medicine in Harris County.

Scheffey claimed to be one of the top orthopedic surgeons in the county before he was arrested at a Pasadena Montgomery Ward store wearing surgical scrubs, behaving erratically and with 30 grams of cocaine in his Jaguar.

Despite the arrest and his admission that he was addicted to cocaine, Scheffey did not go to prison or lose his license to practice medicine. Instead, he was put on probation by both the criminal justice system and the state agency that polices doctors.

In one lawsuit he's settled, the family of a woman who died in surgery claims she bled to death five days before Scheffey's May 1985 arrest, and that Scheffey appeared to be under the influence of some substance that day.

Scheffey said in a deposition that he was not under the influence of any drug and that the woman died not from bleeding to death but from "a hypotensive crisis with a cardiopulmonary arrest."

In the deposition, Scheffey said he paid $1 million to the family.

In response to a detailed series of written questions about his cocaine and lawsuit problems, Scheffey, through his attorney, said he could not respond, but that he appreciated The Post's interest in "recovering physicians and some of the problems which exist for these doctors."

Scheffey practices only because he has passed frequent drug screening tests and participates in drug counseling.

The 1976 graduate of University of Texas at San Antonio Medical School started a practice in Baytown in 1981.

Scheffey indicated in a deposition that before his arrest he practiced at Humana Hospital Baytown, Gulf Coast Hospital, San Jacinto Methodist Hospital and had courtesy privileges at Methodist Hospital.

The doctor said in the deposition that after the cocaine arrest he was denied privileges at these hospitals and now practices at Doctor's Hospital, Eastway General, Pasadena Beltway, Sunbelt East Regional Medical Center and has courtesy privileges at St. Elizabeth's.

Transcripts of the state board hearing and police reports indicate Scheffey was hurriedly piling up sporting goods and toys at the Montgomery Ward store May 28, 1985, when he caught the attention of store security.

Witnesses said the doctor was wearing a scrub outfit, including booties, and that he was swearing and pacing as he tossed numerous golf balls, tennis rackets, tennis balls, dolls and other items onto a pile before giving the cashier several $100 bills. Witnesses indicated he then walked off to his car.

Police were alerted. They talked to him and checked his identification. Police impounded Scheffey's Jaguar, which he had parked in a fire zone, and said they found the cocaine on an inventory search.

Records show Scheffey, who was sentenced to 10 years probation by deferred adjudication and fined $2,000 in criminal court, admitted to an 18–month cocaine addiction and voluntarily committed himself to a California treatment center. Scheffey fulfilled the terms of his probation and had his criminal case dismissed.

After an investigation and a hearing centering largely on the cocaine incident and not on his practice, Scheffey was placed on 10 years probation by the board.

dealt with Scheffey's legal and professional problems and obviously would tend to damage a professional's practice. This public account in a major newspaper in the area of Scheffey's practice is probative because it tends to show that causes other than the conduct of CNA employees may have led to a decline in Scheffey's reputation and medical practice. Furthermore, it bears on the intent of CNA's employees in conversations about Scheffey's cocaine problems. We thus see acute probative value on the one hand. On the other, there is, of course, prejudice to Scheffey, but nothing to indicate unfair prejudice.[13]

It is difficult to imagine that a trial court would not abuse its discretion if, upon balancing pursuant to Rule 403, it determined that the probative value of evidence like that which was excluded, which bears on the crux of the case, was outweighed by a danger of unfair prejudice. However, the simple answer is that, here, the trial court never performed any balancing of values as envisioned by Rule 403. Nowhere is there an indication that otherwise admissible evidence was excluded because of a danger of unfair prejudice. The trial court clearly excluded this type of evidence because of its erroneous belief that such evidence is not relevant and in so doing abused its discretion. We decline to determine whether the trial court properly balanced competitive values when the record so plainly demonstrates that the trial court performed no balancing analysis as envisioned by Rule 403.

■ Reversible error does not usually occur in connection with evidentiary rulings unless an appellant demonstrates that the whole case turns on the particular evidence excluded or admitted. *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). The trial court permitted Scheffey to put on evidence that his personal and professional reputation had been damaged and that he had suffered severe economic damages as a result of willful and malicious conduct by CNA employees. The court did not permit CNA to defend itself with evidence showing that other factors in Scheffey's past may have caused part or all of any damages suffered by Scheffey or that the CNA employees acted in good faith in saying that Scheffey had been arrested for the sale of cocaine.[14] The exclusion of this type of evidence caused the jury to be presented with a distorted picture of the relevant facts of the whole case.

## STANDING

Scheffey sued in part under Article 21.21 of the insurance code.[15] He also claimed that CNA breached the duty of good faith and fair dealing it owed to him. We conclude that CNA did not owe Scheffey any common-law duty of good faith and fair dealing, and that he has no standing to sue under the insurance code.

### Common–Law Standing

■ A special relationship of trust arises between an insured and the insurer that imposes a duty on the part of insurers to deal fairly and in good faith with their insureds. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). The special relationship arises

---

Scheffey appealed the state board's finding, but the case has not been resolved.

The *10* suits filed against Scheffey in the three-year period contain various complaints. One man claims Scheffey ignored blood and maggots in his leg cast. Two others say their problems worsened after surgery. A woman claims she lost the use of her right hand, and a waitress who said she no longer can work claims his recommendation that she keep her arm above her head for a week contributed to her paralysis.

Mary Flood, *Surgeon arrested for drugs 5 days after patient died*, THE HOUSTON POST, May 15, 1988, at A1, col. 1.

**13.** Scheffey's appellate counsel argue that these "1985" matters were not relevant to CNA conduct in June of 1989 because of remoteness. Although Scheffey's initial arrest was in 1985, much of the consequences, including adverse publicity, continued to occur until June 1989, if not beyond.

**14.** Scheffey told the jury that the telephone statements made by CNA employees were "vicious lie[s]." CNA was not allowed to put on contrary evidence.

**15.** TEX.INS.CODE ANN. art. 21.21 (Vernon 1981 & Supp.1992).

from the unequal bargaining power of the parties and the nature of the insurance contract that would allow an unscrupulous insurer to take advantage of its insureds' misfortunes when bargaining for settlement or resolution of claims. *Id.; St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 618 (Tex.App.—Texarkana 1990, no writ). Scheffey sought to base his suit on a special relationship which arose between CNA and himself.

■ The Workers' Compensation Act[16] contemplates a three-party agreement entered into by the employer, the employee, and the compensation carrier, and the insurance carrier has a duty to deal fairly and in good faith with injured employees in the processing of claims. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212–13 (Tex.1988). Furthermore, when a person contracts with an insurer *for the benefit of another*, both the person contracting and the third party may expect that the insurer would owe the same duty to the designated third party as it would to the person making the contract. *See St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d at 618. Scheffey contends that, as physician of choice to CNA's third-party insureds—the employees of the companies insured by CNA—he is in such close nexus with the injured employees that he is entitled to the same status as a third-party beneficiary to the insurance contract. No Texas court has extended the insurer's duty of good faith and fair dealing to persons in Scheffey's position. Scheffey did not have any special relationship with CNA, and he was not a person to whom CNA owed a duty of good faith and fair dealing.

*Insurance Code Standing*

■ Patently, Scheffey would not have standing to sue under Article 21.21–2,[17] commonly called the Unfair Claim Settlement Practices Act, for unfair claims settlement practices because that act does not create a private cause of action. *Progressive County Mut. Ins. v. Boman*, 780 S.W.2d 436, 437 (Tex.App.—Texarkana 1989, no writ); *Cantu v. Western Fire & Casualty Ins. Co.*, 716 S.W.2d 737, 741 (Tex.App.—Corpus Christi 1986), *writ ref'd n.r.e. per curiam*, 723 S.W.2d 668 (Tex. 1987). And, while Scheffey originally alleged an action under the Deceptive Trade Practices Act, incorporating Article 21.21, this part of his action was severed before trial.[18] Thus, the only way in which Scheffey might have standing to sue as "a person" is under Article 21.21, generally. There is no authority for the meaning of the term "person," as found in Article 21.-21,[19] to be extended beyond one who is either an insured or an intended beneficiary of the policy. *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Whether there is any private cause of action under Article 21.21 apart from by incorporation in a Deceptive Trade Practices Act action may well be an open question. *See Hi–Line Elec. Co. v. Travelers Ins. Co.*, 593 S.W.2d 953, 954 (Tex.1980), a per curiam opinion on application for writ of error, refusing the application and finding no reversible error in the decision in *Hi–Line Elec. Co. v. Travelers Ins. Co.*, 587 S.W.2d 488 (Tex.Civ.App.—Dallas 1979), *writ ref'd n.r.e. per curiam*, 593 S.W.2d 953 (Tex.1980).

**16.** Texas Workers' Compensation Act, Tex.Rev. Civ.Stat.Ann. art. 8308–1.01, et seq. (Vernon Supp.1992).

**17.** Tex.Ins.Code Ann. art. 21.21–2 (Vernon 1981 & Supp.1992).

**18.** Section 17.50(a)(4) of the Deceptive Trade Practices Act incorporates Article 21.21 of the insurance code in its entirety. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex.1988); Tex.Bus. & Com.Code Ann. § 17.-50(a)(4) (Vernon 1987); *see generally* Joseph G.

Chumlea, *Statutory Claims for Unfair Insurance Settlement Practices—Vail v. Texas Farm Bureau Mutual Insurance Company*, 20 St. Mary's L.J. 571, 580–81 (1989).

**19.** Section 16(a) of Article 21.21 provides that:

Any person who has sustained actual damages as a result of another's engaging in an act or practice declared ... to be unfair methods of competition ... may maintain an action against the person or persons engaging in such acts or practices.

Article 21.21 regulates trade practices in the business of insurance in accordance with the declaration of policy expressed by the Congress March 9, 1945, relating to the regulation of the insurance business by the states.[20] TEX.INS.CODE ANN. art. 21.21, § 1(a). Nothing in either the Act of Congress or in Article 21.21 would suggest that one such as Scheffey with the relationship, if any, that Scheffey and CNA have with each other, would be in a position to claim that CNA unfairly competed or practiced the business of insurance. Certainly Scheffey is not in the business of insurance, nor is he competing with CNA. Furthermore, he has not claimed that CNA is unfairly competing or practicing in the business of insurance. While whether a private cause of action under Article 21.21 may be maintained may be an open question, Scheffey may not maintain a private cause of action under Article 21.21 under the circumstances of this case.

## RECUSAL QUESTION

After the trial of this case, CNA moved to recuse the trial judge, Kenneth Harrison, from further participation in the case, particularly from ruling on the hearing on CNA's motion for new trial. After judgment, CNA, on March 19, 1991, timely filed a motion for new trial and gave notice that it intended to orally present the motion for new trial at a hearing April 21, 1991. CNA also filed a motion to recuse the trial judge from further proceedings because there had developed the appearance of impropriety which would preclude the trial judge's further participation. This motion was duly verified and stated particular grounds why the judge should not sit on further proceedings, as required by TEX.R.CIV.P. 18a. The particular grounds included allegations that, in December 1990, while the

case was pending before Judge Harrison, Scheffey, his attorney, James Spradlin, and Spradlin's wife, Kathy, each made valuable contributions to Harrison's election campaign, and that Scheffey did not contribute to the campaigns of any other judges. The motion further averred that James Spradlin and Judge Harrison had a close association long before Harrison became a judge; that before becoming a judge Harrison had used Spradlin's law office to conduct legal business; that while sitting as a judge Harrison had given Spradlin ten court appointments; that by pretrial and trial rulings favorable to Spradlin and Scheffey, Judge Harrison's conduct gave rise to the appearance of impropriety; and that CNA first learned of these matters after the case was tried.

■■ Public policy demands that a judge who tries a case act with absolute impartiality. *Prendergass v. Beale,* 59 Tex. 446, 447 (1883). It further demands that a judge appear to be impartial so that no doubts or suspicions exist as to the fairness or the integrity of the court. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Judicial decisions rendered under circumstances that suggest bias, prejudice or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the principles on which the judicial system is based. *Sun Exploration and Prod. Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989) (Spears, J., concurring).[21]

■■ In *Sun Exploration and Prod. Co. v. Jackson,* the motion to recuse the judge was apparently to recuse the judge from participating in the trial. That situation has been addressed before and, ordinarily, it is held that Rule 18a requires that a motion to recuse a judge assigned be

**20.** 15 U.S.C.A. §§ 1011–1015 (West 1976).

**21.** In discussing Rule 18a in his concurring opinion in *Sun Exploration and Prod. Co.,* Justice Spears noted that the rule may not contemplate the situation in which a party does not know of the disability of the judge to sit in a case until after trial. *Sun Exploration and Prod. Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989); *see also* Sam Sparks, *Judicial Recusal: Rule*

*18a—Substance or Procedure,* 12 ST. MARY'S L.J. 723 (1981). Although the supreme court did not address the recusal question in the *Sun Exploration and Prod. Co.* case, Justice Spears made it clear that, because the relationship between the judge and attorneys was not revealed until after trial, Sun should be permitted to present a motion for recusal pursuant to Rule 18a on remand of the case. 783 S.W.2d at 206–07.

filed more than ten days before trial. For instance, in *Vickery v. Texas Carpet Co.,* quoting from part of Rule 18a, the court held that the motion to recuse the judge must be filed at the earliest practical time prior to commencement of the trial. *Vickery v. Texas Carpet Co.,* 792 S.W.2d 759, 763 (Tex.App.—Houston [14th Dist.] 1990, writ denied). We agree that a motion to recuse a judge from participating in a trial should be filed before ten days of trial. However, Rule 18a addresses motions which are filed before "the date set for trial *or other hearing ...*" (emphasis added). Here, CNA did not file its motion to recuse until after trial. However, CNA did not ask that the judge be recused from participating in the trial; rather, it asked that the judge recuse himself from further proceedings in the case, specifically from presiding at the hearing on a motion for new trial. Here, the motion to recuse was filed in March, more than ten days before the April 29, 1991, date set for the hearing on motion for new trial.

TEX.R.CIV.P. 18a, entitled *Recusal or Disqualification of Judges,* provides the basis for our determination of the recusal questions. The first sentence of that rule provides that, "At least ten days before the date set for trial or other hearing in any court ... any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case." Rule 18a(c) provides that before any further proceedings, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion. When the judge declines to recuse himself, the presiding judge is required to immediately set a hearing before himself or some other judge designated by him. TEX.R.CIV.P. 18a(d). Judge Harrison declined to recuse himself and appropriately contacted the presiding judge of the administrative judicial district, Thomas J. Stovall, Jr. On April 16, 1991, Judge Stovall sent the following brief notice to all parties, saying that, "The pending Motion to Recuse Judge appears to be untimely filed. I decline to hear it myself, or appoint a Judge to hear it."

Although the detailed allegations in the verified motion to recuse might lead a disinterested person to conclude that an appearance of impropriety existed surrounding Judge Harrison's presiding over the hearing on motion for new trial, because there was no hearing on the motion to recuse and no exercise of judicial discretion in determining whether the motion should have been granted, we are not in a position to review any ruling for abuse of discretion, as contemplated by TEX.R.CIV.P. 18a(f). We are required, however, to determine whether CNA was entitled to a hearing on the motion to recuse Judge Harrison, filed after the judgment in this case.

Here, CNA filed a motion to recuse from further proceedings, particularly from hearing the motion for new trial, more than ten days before the date set for a hearing on the motion for new trial. The trial judge declined to recuse himself and requested the presiding judge of the administrative district to take action in accordance with Rule 18a(c). The rule is clear. It provides that the presiding judge of the administrative district "shall immediately set a hearing before himself or some other judge designated by him...." TEX.R.CIV.P. 18a(d). Contrary to that plain mandate, the presiding judge of the administrative district declined to set a hearing before himself or a judge designated by him. We conclude that CNA was entitled to have a hearing on its motion to recuse the judge from further proceedings and that the denial of a hearing to CNA was error.

The errors discussed in connection with the issues we have resolved are serious. We are of the opinion that the errors are of the type which are reasonably calculated to cause and probably did cause the rendition of an improper judgment. Thus, the case must be reversed and remanded for a new trial. TEX.R.APP.P. 81(b)(1). Our action makes moot numerous other points of error and our disposition of the appeal will decide others.[22]

---

**22.** For instance, points of error assail the is- suance of an injunction and an order of con-

The judgment is reversed, and the case is remanded to the trial court.

tempt contained in the judgment. Because the entire judgment is reversed, all orders contained therein are likewise set aside.