Thomas D. SHELTON and Wife, Ann Shelton, Appellants,

v.

UNION BANKERS INSURANCE COMPANY and Donny Stone, Appellees.

No. 6–91–127–CV.

Court of Appeals of Texas, Texarkana.

Feb. 9, 1993.

Order Overruling Motion for Rehearing April 6, 1993.

Rehearing Overruled May 11, 1993.

---

Gregory P. Grajczyk, Longview, for appellants.

David R. Watson, Longview, Bob E. Shannon, Austin, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Thomas and Ann Shelton appeal from a take-nothing judgment based on a jury verdict in their suit against Union Bankers Insurance Company and independent insurance agent Donny Stone. We affirm the judgment in part, reverse the judgment in part, and remand the case for a new trial of the Sheltons' cause of action for breach of the duty of good faith and fair dealing and for attorney's fees.

## FACTS

Thomas Shelton claimed hospitalization and medical benefits under his health insurance policy, issued by Union Bankers, after he had hip replacement surgery. The surgery was performed about seven months after the policy was issued. Union Bankers denied the claim, contending that his hip necrosis was an undisclosed pre-existing condition not covered by the policy.

Following the surgery and denial of the claim, Union Bankers attempted to reform the policy to eliminate coverage for Shelton's hip condition. When the Sheltons refused to agree to the reformation, Union Bankers cancelled the policy on the ground that Shelton had made a material misrepre-

sentation when applying for the insurance by failing to disclose his condition in response to questions on the application form.

Shelton contended that, while completing the application for the insurance, he told agent Donny Stone about aches in his knee. Stone denied that he was told about the condition and said he would have recorded such information had he been told about it, because the application inquired specifically about bursitis. Shelton also contended that Union Bankers precertified and thus agreed to pay for his surgery before it was performed. Stone concedes that he spoke with the Sheltons shortly before the surgery, but he denies that he precertified payment for the surgery. Rather, he claims that he told the Sheltons only that the *type of surgery* that Shelton was to have was covered by the policy.

The Sheltons sued for breach of contract, violations of the Deceptive Trade Practices Act and Texas Insurance Code, and breach of the duty of good faith and fair dealing. The jury resolved all issues against them, except for finding that Thomas Shelton did not intend to deceive Union Bankers regarding his condition at the time he applied for the insurance.

### MISREPRESENTATION AND INTENT TO DECEIVE

The Sheltons contend the trial court erred by failing to hold that Union Bankers breached its contract as a matter of law by cancelling the policy. Their argument is based on the jury's finding that Thomas Shelton did not intend to deceive Union Bankers by misrepresenting his condition.

The Sheltons contend that a misrepresentation must be made with intent to deceive before it may be grounds for voiding an insurance policy. *See Mayes v. Massachu-*

*setts Mut. Life Ins. Co.,* 608 S.W.2d 612 (Tex.1980); *Progressive County Mut. Ins. Co. v. Boman,* 780 S.W.2d 436 (Tex.App.—Texarkana 1989, no writ). Since the jury found there was no intent to deceive, the Sheltons argue that Union Bankers breached the contract when it cancelled the policy.

Union Bankers argues that the requirement of an intent to deceive applies only to life insurance policies. It points out that health insurance policies are governed by Article 3.70–3 of the Texas Insurance Code,[1] and argues that the statute allows a health insurance policy to be voided on the basis of an unintentional misrepresentation within two years of the policy's inception. Shelton indisputably made his claim, and Union Bankers discovered what the jury found to be a material misrepresentation, within two years of his purchase of the insurance contract.[2]

We conclude that intent to deceive must be proven to void a health insurance policy on the basis of a misrepresentation, even within the policy's first two years. In addition to setting a time limit, Article 3.70–3(A)(2) further provides:

> (The foregoing policy provision shall not be so construed as to affect *any legal requirement* for avoidance of a policy or denial of a claim during such initial two-year period....)

(Emphasis added.) This language would appear to defer to a common-law rule that fraud be proven to void a health insurance policy. And such a common-law rule was established before Article 3.70–3 was adopted in 1955.

In *General American Life Ins. Co. v. Martinez,* 149 S.W.2d 637 (Tex.Civ.App.—El Paso 1941, writ dism'd judgm't cor.), the court was confronted with jury findings very similar to those in this case.[3] The

---

1. "Time Limit on Certain Defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period." TEX.INS. CODE ANN. art. 3.70–3(A)(2) (Vernon 1981).

2. Jury Questions and Answers Nos. 11–16. *See* TEX.INS.CODE ANN. art. 21.16 (Vernon 1981).

3. In response to Jury Questions Nos. 11–14, the jury in this case found that Thomas Shelton had made a representation to Union Bankers, regarding his skeletal system and knee, that was false and material and upon which Union Bankers had relied in issuing the insurance policy.

jury in *Martinez* found that the plaintiff, who was suing on a disability policy, falsely represented that he had not had any disease or injury nor received medical advice or attention within the previous five years, but also found that Martinez did not make the false answer intentionally to induce the company to issue the insurance.[4] *General American Life Ins. Co. v. Martinez*, 149 S.W.2d at 639. In affirming the judgment awarding damages to Martinez, the court said, "a material misrepresentation does not defeat recovery if innocently made; that is, without intent to deceive." *Id.*

The *Martinez* case was later cited by the Supreme Court when it wrote:

> It is also well settled in this State that to avoid a policy of insurance because of misrepresentations, the burden is on the insurer to plead and prove, not only that the answers made by the insured were false or untrue, but that the insured knew, or should have known, that they were untrue, and that he made them willfully and with the intention of inducing the insurer to issue him a policy.

*Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 823 (1947). Although *Clark* involved a life insurance policy, it appears that the court, by citing *Martinez*, acknowledged that intent to deceive was also required to void a health insurance policy.[5] Since the adoption of Article 3.70–3, the application of the intent to deceive requirement to health insurance policies has been reaffirmed. *See*

*Republic Bankers Life Ins. Co. v. Coffey*, 490 S.W.2d 231, 233 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.);[6] *United American Ins. Co. v. Harp*, 290 S.W.2d 392 (Tex. Civ.App.—Amarillo 1956, no writ), *citing Clark v. National Life & Accident Ins. Co.*, 200 S.W.2d 820.

We find that to void the policy for a misrepresentation Union Bankers was required to prove that Shelton intended to deceive it when he misrepresented his physical condition. As the jury found that Shelton did not intend to deceive, Union Bankers breached the policy as a matter of law when it cancelled the insurance contract on the basis of misrepresentation.

## VOID POLICY LANGUAGE

The Sheltons also argue that the trial court erred in overruling their motion for a new trial because certain language in the insurance policy is void and unenforceable. The Sheltons contend that the policy's pre-existing condition provision fails to meet the statutory standards of TEX.INS. CODE ANN. art. 21.16, et seq. (Vernon 1981 & Supp.1993), and is also void as contrary to public policy.

The pre-existing condition provision in the policy provided:

> A pre-existing condition is a medical condition not disclosed on the application for which, prior to the Effective Date of coverage:
>
> 1. Medical advice or treatment was recommended by, or received from, a Doc-

---

But the jury answered "No" to Question No. 15, which asked, "Was the representation of Thomas Shelton made with an intent to deceive Union Bankers Insurance Company and induce them into issuing an insurance policy?"

4. The fact that *Martinez* involved a disability insurance policy should not distinguish that case from this, a suit on a health insurance policy. The Texas Insurance Code in Article 3.01 defines a "health insurance company" as one "deemed to be a corporation doing business under any charter involving the payment of any amount of money, or other thing of value, conditioned upon loss by reason of disability due to sickness or ill-health." TEX.INS.CODE ANN. art. 3.01, § 3 (Vernon 1981). Therefore, the policy issued in *Martinez* would clearly fall within the province of a health insurance company.

5. The *Clark* decision also cited another health insurance case, *Provident Life & Accident Ins. Co. v. Flowers*, 91 S.W.2d 847 (Tex.Civ.App.—El Paso 1936, writ dism'd), although the *Provident* decision speaks more of the materiality requirement than of intent to deceive.

6. The *Coffey* decision states that an insurer must show that a misrepresentation was "made to induce [the insurer] to issue the policy" before the insurer may avoid the policy. *Republic Bankers Life Ins. Co. v. Coffey*, 490 S.W.2d 231, 233 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). We believe that making a misrepresentation to induce an insurer to issue a policy is the equivalent of intending to deceive an insurer.

tor within the 2 year period before the Effective Date of coverage; or

2. Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the 1 year period before the Effective Date of coverage.

Pre-existing conditions aren't covered unless the loss for such conditions begins more than 2 years after the Effective Date of coverage.

The Sheltons argue that by imposing an ordinarily prudent person's standard to the question of "medical condition not disclosed on the application," the policy does away with the legislatively required elements of materiality, intent to deceive, reliance, and notice. This argument, however, confuses the separate defenses of misrepresentation and pre-existing condition. The defense of misrepresentation is controlled by Tex.Ins. Code Ann. arts. 3.70–3, 21.16, and 21.17, and this defense requires materiality, intent to deceive, reliance, and notice.

On the other hand, the pre-existing condition defense is governed by Tex.Ins.Code Ann. art. 3.70–1(E)(1)(e) (Vernon 1981). Pursuant to the authority granted by the latter article, the State Board of Insurance has issued a definition of pre-existing condition much like the definition in the policy. *See* 28 Tex.Admin.Code § 3.3018 (West 1988); Tex.Ins.Code Ann. art. 3.70–1(E)(1)(e). The only difference is that the policy here is more lenient than the State Board's standard. Union Bankers' policy excludes coverage of conditions arising within one year prior to the policy's issuance; conditions arising within five years may be excluded under the regulatory standard. The Legislature has weighed policy on this matter and left the elements of the pre-existing condition standard to the discretion of the State Board of Insurance. As the policy involved here falls within the standards set by the Board, its language is not void as against public policy.

## BREACH OF GOOD FAITH

■ The Sheltons further contend that the trial court erred by failing to find as a matter of law that Union Bankers violated its duty of good faith and fair dealing. The jury made no finding on this issue; it was unnecessary, since it found that Union Bankers did not breach the insurance contract. Because we hold that Union Bankers breached the contract by cancelling the policy, we must examine whether Union Bankers may have breached a duty of good faith and fair dealing by cancelling the insurance policy without a reasonable basis.

No court has decided whether a cause of action for breach of good faith and fair dealing may exist where the insurer breached the insurance contract by cancelling it, but did not breach it by failing to pay a claim. Our Supreme Court recognized the duty of good faith and fair dealing owed by an insurer to the insured in *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987), and held that such duty may be breached where there is no reasonable basis for denial of a claim or delay in payment. *Id.* at 167. The Supreme Court has not considered an unreasonable cancellation of the policy in the context of a breach of the duty of good faith and fair dealing, but it has held that the duty of good faith arises from the special relationship between the insurer and insured created by the contract. *Id.; see also Paramount Nat'l Life Ins. Co. v. Williams*, 772 S.W.2d 255, 264 (Tex.App.—Houston [14th Dist.] 1989, writ denied). It should follow that the duty applies to the whole insurance contract, not merely to individual claims under it. Consequently, we believe the duty of good faith and fair dealing may be breached where the insurer cancels the contract without a reasonable basis.[7]

■ The Sheltons ask us to find a breach of good faith as a matter of law, but

---

7. We note that a court of appeals has found the converse also to be true: that, where a reasonable basis for rescinding or voiding the insurance contract existed, there could be no breach of the duty of good faith and fair dealing. *Ko-ral Industries v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147–48 (Tex.App.—Dallas), *writ denied per curiam*, 802 S.W.2d 650 (Tex. 1990).

breach of good faith is a question of fact. As an appellate court we may not find facts; we may only review a jury's or trial court's findings. The jury failed to answer the question regarding breach of good faith and fair dealing for cancelling the contract. Thus, we must remand this phase of the case for trial.

## IRRECONCILABLE CONFLICT IN JURY ANSWERS

The Sheltons also argue that the trial court erred in denying their motion for new trial because there existed an irreconcilable conflict in the jury answers. They contend that the jury's finding that Thomas Shelton did not intend to deceive Union Bankers conflicts with its finding that Union Bankers did not breach the contract by cancelling it. As we have already found that Union Bankers breached the contract by cancelling it when there was no intent to deceive, we need not consider this point.

## LEGAL SUFFICIENCY

■ The Sheltons contend that the evidence was legally insufficient to support the jury's answers denying their breach of contract and deceptive trade practices claims.[8] Because of our previous holdings, we need not consider the arguments concerning breach of contract due to cancellation. However, we must review this contention as to the jury's failure to find that Union Bankers breached the insurance contract by denying the Sheltons' claim for benefits under the policy.

The Sheltons had the burden of proof on all of their claims. Therefore, to prevail on a legal insufficiency point, they must show that their claims were established as a matter of law. *See* W. Wendell Hall, *Standards of Appellate Review in Civil Appeals*, 21 St. Mary's L.J. 865, 907 (1990). In reviewing whether a claim has been established as a matter of law, we must first examine the record for evidence that supports the finding while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). Only if there is no evidence to support the finding do we examine whether the contrary is established as a matter of law. *Id.*

The jury was instructed, regarding the Sheltons' breach of contract claim, that the insurance policy, by its terms, did not cover pre-existing conditions. A pre-existing condition was defined as one not disclosed on the application for insurance for which an ordinarily prudent person would have sought diagnosis, care, or treatment within one year of the effective date of coverage.

Union Bankers received Thomas Shelton's claim for surgery to replace his hip joint about seven months after he had denied having any disorders of the knee or any bursitis. Dr. Dalton Carpenter, who performed the surgery on Shelton, testified by deposition that Shelton had chronic avascular necrosis and that "chronic" meant the condition had existed "for a while." Records from Dr. N.B. Riddle, who treated Shelton about a month before the surgery, indicated that Shelton had experienced pain in his left hip, thigh, and knee for about one year. Dr. Carpenter testified that, according to his records, Shelton stated that he began having serious pain in his hip five years earlier. Debora Jordan, an underwriter for Union Bankers, testified that she reviewed the medical records from the two doctors and compared them to Shelton's application and then determined that Shelton's condition was pre-existing. Ann Shelton testified that she received a phone call from Doris Haltom, an employee of Union Bankers, following the surgery and the filing of the claim. In that phone call, Union Bankers again was told by Ann Shelton that Thomas Shelton had no history of pain.

This evidence clearly surpasses the scintilla threshold and is sufficient to defeat a claim that the lack of a pre-existing condition was established as a matter of law. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61 (Tex.1983). It is not necessary for us to consider the evidence to the contrary. For that reason, the Sheltons' action for breach of the duty of good faith

8. Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Vernon 1987 & Supp.1993).

and fair dealing based on Union Bankers' denial of their claim is likewise foreclosed.[9]

The Sheltons further argue, in both their breach of good faith and deceptive trade practices points, that Union Bankers and Stone assured them that the policy would pay for the surgery, and that this establishes their claims for breach of good faith and deceptive trade practices as a matter of law. However, more than a scintilla of evidence exists to the contrary.

Stone testified that he only verified that the hip surgery was a covered procedure, not that the insurance company would in fact pay the specific claim. The Sheltons also alleged in their petition that Union Bankers informed Dr. Carpenter and Longview Regional Hospital before the surgery that there was coverage. However, Dr. Carpenter testified that he had no record of a precertification from Union Bankers. Moreover, one of the Sheltons' exhibits showed that Union Bankers informed Longview Regional Hospital the day before the surgery that liability was undetermined and that it would need to review the medical records.

Again, this evidence is more than a scintilla, and we need not review the contrary evidence to see if it establishes the Sheltons' claims as matter of law.

FACTUAL SUFFICIENCY

The Sheltons also challenge the factual sufficiency of the evidence as to the jury's failure to find a breach of contract for denying the claim and violations of the Deceptive Trade Practices Act. They also challenge the factual sufficiency of the evidence as to the jury's finding that Union Bankers had notified the Sheltons within a reasonable time that it denied the claim.

Since the Sheltons had the burden of proof on their claims, they must demonstrate that the jury's failure to find for them on these issues is against the great weight and preponderance of the evidence. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex. 1973); *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d 264, 275–76 (Tex. App.—Amarillo 1988, writ denied). In reviewing whether a jury finding is against the great weight and preponderance of the evidence, we must examine the record to ascertain whether the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In conducting such a review, we must be mindful of the respect due the jury's determination, and we should not set it aside unless it appears clearly wrong. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

The Sheltons concede that the policy did not cover a pre-existing condition. The jury was instructed that such a condition is one which "would cause an ordinarily prudent person to seek diagnosis, care or treatment within the one year period before the effective date of coverage." The Sheltons argue that the evidence clearly shows that an ordinarily prudent person would not have sought treatment in Thomas Shelton's case.

Thomas Shelton testified that during his application he told Stone about aches and pains in his knees. He further stated that the pain was not severe until two months before he sought treatment from Dr. Riddle. Dr. Carpenter testified that he saw nothing that would cause a similar patient to definitely seek medical attention in the year before Shelton's surgery. Dr. Riddle stated that he had no way of knowing at what time before surgery Shelton's pain became severe. However, both Dr. Riddle's and Dr. Carpenter's records indicated that Shelton's pain had begun at least a year before his surgery. And Stone disputed the testimony that Thomas Shelton's

9. As stated previously, the Sheltons submitted two separate jury questions regarding breach of contract: one based on Union Bankers' denial of the claim (Question No. 1), and one based on Union Bankers' cancellation of the policy (Question No. 4). The Sheltons likewise asked two separate questions regarding breach of the duty of good faith and fair dealing: one based on the claim denial (Question No. 2), and one based on the policy cancellation (Question No. 5). Both questions relating to the breach of good faith were conditioned on positive answers to the breach of contract questions.

aches and pains were disclosed when the application was being completed. In view of this conflicting evidence, we cannot say that the jury's failure to find that denial of the claim constituted a breach is against the great weight and preponderance of the evidence. The jury obviously believed Shelton's condition was pre-existing and thus not covered by the policy. There is no evidence of any other reason for denying payment.

Regarding the Sheltons' deceptive trade practices claims, their claim of breach of the duty of good faith and fair dealing, and their assertion that Stone and Union Bankers precertified coverage of the surgery, the Sheltons rely on their own testimony. Union Bankers and Stone rely on Stone's testimony that he only assured the Sheltons that the type of surgery was covered by the policy and the evidence that neither Dr. Carpenter nor the hospital was given precertification for the surgery. In view of this evidence, we cannot say the jury's failure to find is against the great weight and preponderance of the evidence.

The Sheltons further contend that the evidence regarding Union Bankers' notice of claim denial was factually insufficient. Notice is required for the defense of misrepresentation, and we have already found that Union Bankers failed to prove one element of the defense of misrepresentation. Consequently, we need not consider this contention.

## DAMAGES

■ Finally, the Sheltons argue that the jury's negative findings regarding damages and attorney's fees are against the great weight and preponderance of the evidence. They note that all parties stipulated that if Union Bankers were liable for the policy benefits necessary to cover hip surgery, the amount due would be $12,906.40. However, because the jury found that Union Bankers did not breach the contract by denying the claim, it is not liable for the policy benefits.

On the other hand, we have found that Union Bankers breached the insurance policy by cancelling it. The $12,906.40 hospital and medical benefits are not recoverable as damages for wrongful cancellation, because they were excluded under the pre-existing condition exclusion. The jury awarded no damages for future mental anguish and future loss of credit—damages related to the policy's cancellation. We must therefore determine whether the jury's failure to award damages for these elements is against the great weight and preponderance of the evidence.

The most compelling evidence of future damages came from Dr. Carpenter, who testified that Shelton would need more surgery on his hip in the future as the hip replacement deteriorated. However, any such surgery would not be covered by the insurance policy because of its pre-existing condition clause.

Ann Shelton testified she could suffer a relapse of her multiple sclerosis condition because of the work and stress caused by the policy cancellation. She also testified that she had to deal with rude, persistent creditors. Thomas Shelton testified that he worried about his wife's multiple sclerosis condition and his loss of credit, although there is no evidence of any loss of credit stemming from the policy cancellation. Much of the Sheltons' testimony is uncontradicted. Nevertheless, the testimony consists solely of subjective evidence from interested witnesses. As such, it does no more than raise a fact question for the jury to resolve. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Moreover, all evidence of damages offered by the Sheltons relates to Union Bankers' denial of coverage for the hip problem. Those damages would have existed even if the policy had not been cancelled, as Shelton's hip necrosis was a pre-existing condition not covered by the policy. There was no evidence of mental anguish suffered at the loss of Shelton's health insurance because of conditions not related to his left hip.

■ The Sheltons argue that a jury may not disregard uncontroverted evidence and award no damages when damages are clearly present. *See Sansom v. Pizza Hut of East Texas, Inc.*, 617 S.W.2d 288, 293 (Tex.Civ.App.—Tyler 1981, no writ). The

rule cited by the Sheltons applies only where there exists objective signs of injury. *Lowery v. Berry,* 153 Tex. 411, 269 S.W.2d 795 (1954); *Szmalec v. Madro,* 650 S.W.2d 514 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *cf. Sansom v. Pizza Hut of East Texas, Inc.,* 617 S.W.2d at 293. Here, there is no evidence of objective injuries suffered because the insurance policy was cancelled. The jury's failure to award damages was not so against the great weight and preponderance of the evidence so as to be clearly erroneous.

## ATTORNEY'S FEES

Finally, the Sheltons complain about the jury's failure to award attorney's fees. Two questions were submitted on attorney's fees. One asked what sum of money would be reasonable and necessary attorney's fees. The jury answered none. The other asked what was a reasonable fee stated as a percentage of the Sheltons' recovery. The jury answered thirty-three percent. The Sheltons' claim for attorney's fees was based on all their causes of action. The evidence of reasonable and necessary fees was not segregated as to the various causes of action. As the Sheltons have not prevailed on several of their causes of action, but we are remanding for trial their claim for breach of good faith and fair dealing in cancelling the policy, we conclude that we should remand the claim for attorney's fees as well.

## CONCLUSION

We find that Union Bankers breached its contract with Thomas Shelton by cancelling his health insurance policy. However, the jury found no damages resulting from this breach, and the jury's failure to find damages was not against the great weight and preponderance of the evidence. The issue of whether Union Bankers, by cancelling the policy, breached the duty of good faith and fair dealing was not reached by the jury and must be remanded for trial.

The parties stipulated as to the amount necessary to cover the costs of Thomas Shelton's surgery, but the policy benefits were not recoverable as Shelton's hip ne-

crosis was a pre-existing condition not covered by the policy. The evidence was both legally and factually sufficient to support the implied finding of a pre-existing condition. The jury's failure to find that Union Bankers and Donny Stone engaged in deceptive trade practices by precertifying payment of Shelton's claim also is not against the great weight and preponderance of the evidence.

The judgment is affirmed except as to the cause of action against Union Bankers for breach of the duty of good faith and fair dealing in cancelling the insurance policy and for attorney's fees. As to those issues, the judgment is reversed and remanded to the trial court for a new trial.

It is so ordered.

## ON MOTION FOR REHEARING

In their motion for rehearing, the Sheltons argue that we erred in stating that future expenses relating to Thomas Shelton's hip condition would not be covered by the policy because of the policy's exclusion of losses due to pre-existing conditions. They point to language providing that the policy will not pay for "treatment for pre-existing conditions *during the first two years*" the policy is in force. The quoted language is not in the policy. It is from a brochure describing highlights of the policy. The brochure contains a disclaimer stating, "This is a brief description of the highlights of this policy, not a contract. See the actual policy for complete terms and conditions." The actual policy language is:

> Pre-existing conditions aren't covered unless the loss for such conditions *begins* more than 2 years after the Effective Date of coverage. Also, those medical conditions excluded from coverage by name or specific description when the loss begins, aren't covered.

(Emphasis added.)

Dr. Carpenter testified that Thomas Shelton would suffer losses in the future because the original hip replacement surgery would need updating. However, those future losses would relate back to the origi-

nal surgery or original loss, which occurred within two years of the policy date. Thus, the pre-existing condition clause would exclude future losses relating to Thomas Shelton's hip condition.

The motion for rehearing is overruled.