UNION BANKERS INSURANCE
COMPANY, Petitioner,

v.

Thomas D. SHELTON and Ann
Shelton, Respondents.

No. D–3930.

Supreme Court of Texas.

Argued Dec. 15, 1993.

Decided June 22, 1994.

Rehearing Overruled Sept. 15, 1994.

Concurring Opinion of Chief Justice
Phillips Nov. 22, 1994.

Joe R. Greenhill, Bob E. Shannon, Patrick O. Keel, Austin, for petitioner.

Edward L. Merritt, Gregory P. Grajczyk, David O. Nobles, Longview, for respondents.

HIGHTOWER, Justice, delivered the opinion of the Court, in which DOGGETT, GAMMAGE and SPECTOR, Justices, join.

This case requires that we determine (1) whether an insured's intent to deceive must be proved in order for an insurance company to successfully raise a defense of misrepresentation to a breach of contract action in connection with the cancellation of an individual health insurance policy within two years of the date of its issuance when the cancellation is based upon the insured's misrepresentation in the application for insurance; and (2) whether a cause of action for breach of the duty of good faith and fair dealing exists when an insurer cancels an insurance policy without a reasonable basis. We conclude that (1) an insured's intent to deceive is required for an insurer to cancel an individual health insurance policy within two years of the date of its issuance on the grounds of a misrepresentation in the application and (2) the duty of good faith and fair dealing extends to an insurer's cancellation of a policy.

Thomas and Ann Shelton sued Union Bankers Insurance Company ("Union Bankers") and its agent Donny Stone ("Stone") after Union Bankers cancelled Mr. Shelton's health insurance policy on the basis of an alleged misrepresentation in his application. Among other things, the Sheltons alleged that Union Bankers breached the contract and the duty of good faith and fair dealing by improperly cancelling the policy. The trial court rendered a take-nothing judgment in favor of Union Bankers and Stone. The court of appeals reversed and remanded the case to the trial court for a new trial concerning the duty of good faith and fair dealing. 853 S.W.2d 589. For the reasons explained herein, we affirm the judgment of the court of appeals.

## I.

In April 1988, Mr. Shelton applied to Union Bankers for a health insurance policy.

Mr. Shelton completed the application form with Stone's assistance. In response to certain medical history questions, Mr. Shelton indicated that he had never been treated for, and had no indications of, any disorders of the skeletal or muscular systems. Union Bankers issued a health policy to Mr. Shelton on April 9, 1988.

In November 1988, seven months after the policy was issued, Mr. Shelton underwent total hip replacement surgery to correct necrosis in his left hip joint. Shortly thereafter, the Sheltons filed a claim for benefits under the Union Bankers policy. Union Bankers concluded that the necrosis was an undisclosed pre-existing condition, notified Mr. Shelton that it was denying the claim, and requested that Mr. Shelton execute a rider specifically excluding hip disorders. When he refused to sign the rider, Union Bankers refunded all premiums and cancelled the policy on the ground that the failure to disclose the hip condition was a material misrepresentation in the application for insurance.

The Sheltons sued Union Bankers and Stone, alleging breach of contract, violations of the Deceptive Trade Practices Act and Texas Insurance Code, and breach of the duty of good faith and fair dealing. The jury answered all questions against the Sheltons, except that the jury failed to find that Mr. Shelton intended to deceive Union Bankers when he made the misrepresentation. Based on the jury's verdict, the trial court rendered a take-nothing judgment in favor of Union Bankers and Stone. The court of appeals reversed, holding that because the jury failed to find that Mr. Shelton intended to deceive Union Bankers by misrepresenting his condition, Union Bankers breached the contract as a matter of law when it cancelled the insurance policy. The court of appeals remanded the case to the trial court for a new trial concerning whether Union Bankers breached the duty of good faith and fair dealing in connection with its cancellation of Mr. Shelton's policy.[1]

## II.

Union Bankers contends that the jury's failure to find that Mr. Shelton intend-

---

1. Jury questions No. 5, 6, and 7 addressed the duty of good faith and fair dealing associated

ed to deceive Union Bankers is irrelevant because article 3.70-3(A)(2)(a) of the Texas Insurance Code implies that an insurer may cancel a health insurance policy within two years from the date of its issuance on the basis of an insured's innocent misrepresentation in the application for insurance. We disagree. Article 3.70-3(A) sets forth minimum standards for provisions that must be contained in each accident and sickness policy delivered or issued for delivery to any person in this state.[2] *See* TEX.INS.CODE ANN. art. 3.70-3(A) (Vernon 1981). Among the required provisions contained in the policy issued to Mr. Shelton, is the following clause:

> Time Limit on Certain Defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period.
>
> (The foregoing policy provision shall not be so construed as to affect any legal requirement for avoidance of a policy or denial of a claim during such initial two-year period, nor to limit the application of Section 3(B), (1), (2), (3), (4), and (5) in the event of misstatement with respect to age or occupation or other insurance.)

*Id.* art. 3.70-3(A)(2)(a).[3]

■ The primary rule in statutory interpretation is that a court must look to the

intent of the legislature and must construe the statute so as to give effect to that intent. *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993); *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982). When determining legislative intent, the courts may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991) (considering the nature and object of the act and the consequences of alternate constructions); *Irving Fireman's Relief & Retirement Fund v. Sears,* 803 S.W.2d 747, 750 (Tex.App.—Dallas 1990, no writ) (considering the language of the statute and the legislative history).

The language of article 3.70-3(A)(2)(a) derives from section 3(A)(2)(a) of The Uniform Individual Accident and Sickness Policy Provision Law ("section 3(A)(2)(a)") which was promulgated by the National Association of Insurance Commissioners ("Commissioners") in June 1950.[4] Note, *Insurance Law—Accident and Sickness Policy Provisions Law—Time Limit on Certain Defenses,* 27 N.Y.U.L.REV. 670, 671 n. 4 (1952) [hereinafter *Insurance Defenses* ]. Section 3(A)(2)(a) was the first nationwide effort to create a

---

with the cancellation of the insurance policy. These questions were conditioned on a "Yes" answer to jury question No. 4, asking whether "Union Bankers ... failed to comply with the insurance agreement by canceling the policy...." The jury answered question No. 4 "No," and therefore did not reach questions 5, 6, and 7. Because the court of appeals held that Union Bankers breached the policy as a matter of law when it cancelled the insurance contract, it remanded the case for a new trial on the unanswered duty of good faith and fair dealing questions.

2. Texas insurers may afford their insureds more protection than that required by article 3.70-3(A). TEX.INS.CODE ANN. art. 3.70-3(A) ("[T]he insurer may, at its option, substitute for one or more of such provisions, provisions of different

wording ... which are in each instance not less favorable in any respect to the insured....").

3. Article 3.70-3(A)(2)(a) applies to and governs most individual accident and sickness insurance policies delivered, or issued for delivery, in the State of Texas. *See* TEX.INS.CODE ANN art. 3.70-1(C) (Vernon Supp.1994). No Texas case interprets the language of article 3.70-3(A)(2)(a).

4. The language in article 3.70-3(A)(2)(a) is identical to that in section 3(A)(2)(a) of The Uniform Individual Accident and Sickness Policy Provision Law, except that the time period in section 3(A)(2)(a) is three years rather than two. *See* MODEL INSURANCE LAWS REGULATIONS & GUIDELINES, Uniform Individual Accident and Sickness Policy Provision Law, § 3(A)(2)(a) (National Association of Insurance Commissioners 1977).

type of incontestability provision for all accident and sickness policies. *Id.* at 674.[5]

The phrase "except fraudulent misstatements" represents the "prime feature of compromise in the time limit provisions," functioning to distinguish section 3(A)(2)(a) from the incontestability provisions traditionally contained in life insurance policies, which provide that the policy is not contestable after two years for any reason. *Id.* at 678–79; Charles L. Levy, *Policyholder Misrepresentation and Rescission,* The Second Annual Ultimate Insurance Seminar 22 (State Bar of Texas 1993) ("The language relat[ing] to fraud being necessary *after* the first two years makes sense when one considers that life insurance policies are typically not contestable after two years for any reason.").[6]

It appears that the Commissioners did not intend for section 3(A)(2)(a) to apply to an insurer's right to void its policy or deny a claim during the initial period. *Insurance Defenses,* 27 N.Y.U.L.REV. at 679. This intent is expressed in both parts of section 3(A)(2)(a). The first part provides that accident and sickness policies may not be rescinded after three years from issuance, except for fraudulent misstatements. MODEL INSURANCE LAWS REGULATIONS & GUIDELINES, Uniform Individual Accident and Sickness Policy Provision Law, § 3(A)(2)(a) (National Association of Insurance Commissioners 1977). The second part expressly states that the foregoing provision governing rescission after three years does not affect the law of rescission within the initial three year period. *Id.; see Taylor v. Metropolitan Life Ins. Co.,* 106 N.H. 455, 214 A.2d 109, 115 (1965) (recognizing that the New Hampshire statute by its terms applies only to a loss incurred or to disability commencing after the expiration of two years from the date of issuance of the policy); *see also* Insurance Defenses, 27 N.Y.U.L.REV. at 679–80. We find it signifi-

cant that the Commissioners considered the matter of such importance that they took the additional step of directing the judiciary not to interpret section 3(A)(2)(a) as affecting the law of rescission within the initial three year period.

We believe that this conclusion equally applies to article 3.70–3(A)(2)(a), which mirrors the language of section 3(A)(2)(a), except that it requires an intent to deceive after two years, not three. Thus, construing article 3.70–3(A)(2)(a) to imply that an insurer may cancel a health insurance policy within two years from the date of its issuance on the basis of an innocent misrepresentation conflicts with the apparent intent of the Commissioners and the Texas legislature as expressed in the additional provision concerning the avoidance of a policy or denial of a claim during the initial two-year period.

We hold that article 3.70–3(A)(2)(a) was not intended to affect the determination of whether an intent to deceive must be proved to cancel a health insurance policy within two years of the date of its issuance when the cancellation is based on the insured's misrepresentation in the application for insurance. Thus, we must examine both the relevant statutes and the common law to determine whether the insurer must prove the insured's intent to deceive in order to successfully raise a defense of misrepresentation to a breach of insurance contract action.

### III.

By statute, a misrepresentation in an application for any type of insurance must be material in order to avoid the policy. *See* TEX.INS.CODE ANN. art. 21.16 (Vernon 1981). The proposition that an insured's intent to deceive is likewise required is well established in the common law of this state. *See*

---

**5.** Because most accident and health insurance is subject to cancellation by the insurer or subject to the insurer's right to refuse renewal, the insurer retains the power to nullify the effect of any incontestability provision by terminating the policy before the date that incontestability attaches. *Insurance Defenses,* 27 N.Y.U.L.Rev. at 675. Consequently, the drafters of section 3(A)(2)(a) were careful not to use the term "incontestable" in connection with policies other than non-cancelable policies. *Id.*

**6.** The Texas statute requiring the incontestability provision to be contained in all life insurance policies states "[t]hat the policy ... shall be incontestable after it has been in force during the lifetime of the insured for two (2) years from its date...." TEX.INS.CODE ANN. art. 3.44(3) (Vernon 1981 & Supp.1993).

Couch On Insurance 2d §§ 35:119, 35:122 (1985). The rule was first announced by this court in a personal property fire insurance case, *Lion Fire Insurance Co. v. Starr*, 12 S.W. 45, 46 (Tex.1888), and more recently in several life insurance policy cases. *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980); *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 607–08 (Tex.1964); *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 822–23 (1947). In *Mayes*, we stated:

> It is now settled law in this state that these five elements must be pled and proved before the insurer may avoid a policy because of the misrepresentation of the insured: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation.

608 S.W.2d at 616.

All of the cases cited by the court of appeals and Mr. Shelton properly stand for the proposition that, in Texas, an insured's intent to deceive must be shown in order for an insurance company to successfully raise a defense of misrepresentation on the basis of a false statement made by the insured in the application for any type of insurance. *See Mayes*, 608 S.W.2d at 616 (life policy); *Clark*, 200 S.W.2d at 822–23 (life policy); *Lion Fire Ins. Co.*, 12 S.W. at 46 (fire policy); *Flowers v. United Ins. Co. of Am.*, 807 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1991, no writ) (life policy); *Progressive County Mut. Ins. Co. v. Boman*, 780 S.W.2d 436, 439 (Tex.

App.—Texarkana 1989, no writ) (motorcycle policy); *Republic Bankers Life Ins. Co. v. Coffey*, 490 S.W.2d 231, 233 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.) (hospitalization, surgical, and medical policy); [7] *Republic Bankers Life Ins. Co. v. Hoffman*, 483 S.W.2d 268, 269 (Tex.Civ.App.—Dallas 1972, no writ) (health policy); *Trinity Reserve Life Ins. Co. v. Hicks*, 297 S.W.2d 345, 350 (Tex. Civ.App.—Dallas 1956, no writ) (hospitalization policy); *United Am. Ins. Co. v. Harp*, 290 S.W.2d 392, 395 (Tex.Civ.App.—Amarillo 1956, no writ) (health policy); *General Am. Life Ins. Co. v. Martinez*, 149 S.W.2d 637, 639 (Tex.Civ.App.—El Paso 1941, writ dism'd) (disability policy); *American Cent. Ins. Co. v. Buchanan–Vaughn Auto Co.*, 256 S.W. 610, 612 (Tex.Civ.App.—Texarkana 1923), *aff'd*, 271 S.W. 895 (Tex.Comm'n App. 1925, judgm't adopted) (auto dealers fire policy); *Aetna Accident & Liab. Co. v. White*, 177 S.W. 162, 165 (Tex.Civ.App.—Dallas 1915, writ ref'd) (theft policy); [8] *Phoenix Ins. Co. v. Swann*, 41 S.W. 519, 519 (Tex.Civ.App. 1897, no writ) (fire policy).[9]

■ We hold, therefore, that an intent to deceive must be proved to cancel a health insurance policy within two years of the date of its issuance when the cancellation is based on the insured's misrepresentation in the application for insurance. Because the jury failed to find that Mr. Shelton intended to deceive United Bankers when he misrepresented his physical condition, we affirm the judgment of the court of appeals in so far as it holds that, as a matter of law, Union Bankers breached the insurance contract

---

7. The court of appeals stated with regard to *Coffey* that "making a misrepresentation to induce an insurer to issue a policy is the equivalent of intending to deceive an insurer." 853 S.W.2d at 592 n. 6. We believe, however, that the relationship between the intent to induce and the intent to deceive is more properly explained by the statement in *Allen v. American National Insurance Company*, that "[t]he utterance of a *known* false statement, made with intent to induce action ... is equivalent to an intent to deceive." 380 S.W.2d 604, 608 (Tex.1964) (citing *Texas Industrial Trust, Inc. v. Lusk*, 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd)).

8. Like *Provident Life & Accident Insurance Co. v. Flowers*, 91 S.W.2d 847 (Tex.Civ.App.—El Paso

1936, writ dism'd w.o.j.), discussed by the court of appeals, *Aetna Accident & Liability Co.* relates more to the materiality requirement than to the intent to deceive requirement.

9. Some treatises and courts cite *Inter–Ocean Insurance Co. v. Ross*, 315 S.W.2d 71 (Tex.Civ. App.—Fort Worth 1958, no writ), for the proposition that Texas adopts the view that proof of an intent to deceive is not required to avoid a policy of insurance based upon a misrepresentation. To the extent that *Inter–Ocean Insurance Co.* may be read to allow avoidance of a policy of insurance based upon a misrepresentation defense without a finding of intent to deceive, it is disapproved.

when it improperly cancelled the policy based on the misrepresentation.

## IV.

### A.

■ This holding requires us to determine whether a cause of action for breach of the duty of good faith and fair dealing exists when the insurer cancels an insurance policy without a reasonable basis. The court of appeals reasoned that because the duty of good faith and fair dealing arises from the special relationship between the insurer and the insured, its application should not be limited solely to the denial or delay in payment of individual claims. Therefore, the court of appeals held that there is a cause of action for breach of the duty of good faith and fair dealing when the insurer cancels the policy without a reasonable basis. We agree.

■ This court first recognized the existence of the duty of good faith and fair dealing in the insurance context in *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 167 (Tex.1987). We held that the duty arises from the special relationship that is created by the contract between the insurer and the insured. *Id.; see also Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990) (recognizing that the duty arises "not from the terms of the insurance contract, but from an obligation imposed in law" as a result of the special relationship). A claim for breach of the duty of good faith and fair dealing is separate from any claim for breach of the underlying insurance contract, *Viles*, 788 S.W.2d at 567, and the threshold of bad faith is reached only when the breach of contract is accompanied by an independent tort. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex.1994). A cause of action is stated when the insured alleges that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known of that fact. *Id.* at 18; *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988).

In *Arnold*, we identified several factors giving rise to the special relationship requiring the duty of good faith and fair dealing.

The overriding factor is the parties' unequal bargaining power and the nature of insurance contracts. *Arnold*, 725 S.W.2d at 167. The insurer has exclusive control over the evaluation, processing, and denial of claims. *Id.* Without a cause of action for breach of the duty of good faith and fair dealing, unscrupulous insurers would be able to take advantage of their insureds' misfortunes in bargaining for settlement or in resolving claims by "arbitrarily deny[ing] coverage and delay[ing] payment of a claim with no more penalty than interest on the amount owed." *Id.*

These factors equally apply, and perhaps are even more compelling, when the insurer unilaterally cancels the insured's policy without a reasonable basis. The insured is not merely at the mercy of the insurer to treat him fairly in the processing of a single claim, but must rely on the insurer's good faith for the continued existence of any coverage. The insurer's ability to unilaterally cancel an insurance policy and the insured's inability to prevent cancellation demonstrates a great disparity in bargaining power between the two parties. Furthermore, a failure to extend the duty of good faith and fair dealing to the cancellation of an insurance policy would allow insurers to avoid bad faith liability by cancelling the entire policy rather than denying a single claim.

■ We hold that a cause of action for breach of the duty of good faith and fair dealing exists when the insurer wrongfully cancels an insurance policy without a reasonable basis. A cause of action is stated by alleging that the insurer had no reasonable basis for the cancellation of the policy and that the insurer knew or should have known of that fact.

### B.

■ Because the jury failed to find that Union Bankers breached the contract when it canceled the policy, it did not reach the issue of bad faith in connection with the cancellation. Because we hold as a matter of law that Union Bankers breached the insurance contract when it canceled the policy, this cause must be remanded for a new trial

concerning the breach of the duty of good faith and fair dealing issue.

Union Bankers argues that remand is improper because there is no evidence of bad faith in connection its cancellation of Mr. Shelton's policy. We disagree. There is some evidence in the record to support Mr. Shelton's assertions that Union Bankers' initial correspondence concerning the claim stated that the information omitted from the application was "probably an oversight," and that Union Bankers failed to discuss the application, condition, or claim with Mr. Shelton before making its final determination. In addition, the policy itself states in offset print on the first page:

**IMPORTANT NOTICE ABOUT STATE-MENTS IN THE APPLICATION**

Please read the copy of the application which is a part of this policy. Check to see if any medical history has been left out. Write Us if any information shown isn't right or complete. We issued this policy on the basis that the answers to all questions are right and complete. Any wrong or left out statements *could cause an otherwise valid claim to be denied.*

(emphasis added). This notice contains no indication that a wrong statement might result in an attempted exclusion of coverage for certain medical conditions or cancellation of the entire policy, it may even indicate to the contrary. We hold that this evidence constitutes some evidence of bad faith in connection with the cancellation of the policy, and requires the remand of this cause to the trial court for a new trial.

For the reasons explained herein, we affirm the judgment of the court of appeals.

CORNYN, J., joined by GONZALEZ and HECHT, JJ., concurs in part and dissents in part, with opinion to follow.

ENOCH, J., not sitting.

PHILLIPS, Chief Justice, concurring with the judgment of the Court.

The prior concurring opinion of June 22, 1994 is withdrawn and the following substituted.

Although I join in the judgment of the Court, I write separately to clarify and respond to Union Bankers' arguments regarding the meaning and effect of article 3.70–3(A)(2)(a). I also discuss the possible application of our decision on remand:

I.

I agree with the Court that this statute does not, during the first two years from the issuance of an individual health insurance policy, alter the common law rule that the company must establish the insured's intent to deceive to cancel a health insurance policy on the basis of a misrepresentation in the application for insurance.

Article 3.70–3(A)(2)(a) provides for a time limit on "certain defenses" made by an insurer based on "misstatements ... made by the applicant in the application ... to void the policy or to deny a claim" for loss incurred or disability commencing after the expiration of two years from the date of the policy's issuance. A "misstatement" in an application for insurance may be either a misrepresentation or, in some circumstances, a breach of warranty. *See Odom v. Insurance Co. of Penn.,* 455 S.W.2d 195, 196 (Tex.1970); *Lane v. Travelers Indem. Co.,* 391 S.W.2d 399, 402 (Tex.1965); *Reppond v. National Life Ins. Co. of Am.,* 101 S.W. 786, 788 (Tex.1907). The "certain defenses" which are the subject of article 3.70–3(A)(2)(a) may therefore include both breaches of warranty and misrepresentations.[1]

---

1. For many types of insurance, the Legislature has mandated a policy provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. There is not a similar requirement for individual health insurance contracts, however. *Compare* TEX INS.CODE ANN. art. 3.70–3 (Vernon 1981) and 28 TEX.ADMIN.CODE §§ 3.1–3.9002 (WEST 1994), *with* Act of March 22, 1909, 31st Leg., R.S., ch. 108, 1909 Tex.Gen.Laws 192, 200 (current version at TEX.INS.CODE ANN. art. 3.44(4) (Ver-

non Supp.1994)) (life insurance policies); Act of May 5, 1931, 42nd Leg., R.S., ch. 101, 1931 Tex.Gen.Laws 172, 173 (current version at TEX. INS.CODE ANN. art. 3.50 § 2(3) (Vernon Supp. 1994)) (group life policies); Act of May 25, 1985, 69th Leg., R.S., ch. 673, § 1, 1985 Tex.Gen.Laws 2445, 2446 (current version at TEX.INS.CODE ANN. art. 3.51–6 § 1(d)(2)(iii) (Vernon Supp.1994)) (group accident and health policies); Act of March 20, 1941, 47th Leg., R.S., ch. 89, § 2(b),

Article 3.70–3(A)(2)(a) thus modifies the common law, which does not require proof of intent to deny a claim based on a breach of warranty. While that distinction is not dispositive in the case before us, as these facts clearly present a misrepresentation,[2] it does provide a sound explanation for the purpose of the statute. Thus Union Bankers' argument that the Court's construction would render 3.70–3(A)(2)(a) "meaningless" and "useless" is without merit.[3]

Second, Union Bankers urges the construction of similarly worded statutes from other states to support its claim that the policy may be cancelled during the first two years without proof of intent. As the Court notes, however, Texas has, both before and after the statute, adopted the minority position that intent to deceive is required for cancellation of an insurance policy on the ground of a misrepresentation: *See* COUCH ON INSURANCE 2D § 35:119 and § 35:122 (recognizing split of authority and citing numerous Texas cases supporting view that Texas takes the minority position). *Accord* Appleman, INSURANCE LAW AND PRACTICE § 7297; 43 AM.JUR.2D *Insurance* § 74 (1982). *See also* Jerry, UNDERSTANDING INSURANCE LAW § 102 (recognizing the split of authority). Given this history, the interpretations from states following the majority rule are of little value.

Finally, the application completed by Shelton in this case stated that "to the best of my knowledge and belief the statements above are true and complete and shall be the basis for issuance of a policy and will become a part thereof." As a general rule, when an applicant for insurance makes a statement "to the best of my knowledge," the insurer is required to prove intent to deceive to avoid the policy on the ground that the statement was false. *See* COUCH ON INSURANCE 2D (REV.ED) §§ 35:149–50, 36:35. This rule applies regardless of whether the statement is a warranty or a representation, and whether or not the common law of the jurisdiction requires proof of the insured's intent to deceive for the defense of misrepresentation. *See id.*

1941 Tex.Gen.Laws 111, 112 (current version at TEX INS.CODE ANN. art. 3.52 § 2(b) (Vernon 1981)) (industrial life policies); Act of May 29, 1987, 70th Leg., R.S., ch. 559, § 2 1987 Tex.Gen.Laws 2234, 2235 (current version at TEX.INS.CODE ANN. art. 10.05–1 § (a)(3) (Vernon Supp.1994)) (fraternal benefit societies' life policies); Act of May 5, 1939, 46th Leg., R.S., ch. 6, § 9, 1939 Tex.Gen. Laws 401, 405 (current version at TEX.INS.CODE ANN. art. 14.18 (Vernon 1981)) (all mutual assessment companies' policies, including health); and Act of April 27, 1961, 57th Leg., R.S., ch. 180, § 1, 1961 Tex.Gen.Laws 341, 353 (current version at TEX INS CODE ANN. art. 22.13 § 1(a) (Vernon Supp.1994)) (stipulated premium companies' life policies). Additionally, the distinction has been collapsed in the Texas Administrative Code in various insurance contexts. *See* 28 TEX.ADMIN.CODE § 3.105 (West 1994) (individual life policies); 28 TEX.ADMIN.CODE § 3.5106(a)(2)(D)(i) (West 1994) (credit life-accident-health policies); 28 TEX ADMIN.CODE § 3.804(3)(G) (West 1994) (variable life policies); 28 TEX.ADMIN.CODE § 26.14(g)(8)(B) (West 1994) (small employer group health policies). *But see id.* § 26.14(g)(9) (small employer individual health policies).

**2.** This case involves an alleged misrepresentation. Union Bankers did not at any time allege that Mr. Shelton's false statement was a breach of warranty, nor could it. The policy at issue here states, as discussed *infra*, that "[a]ny wrong or left out statements [in the application] *could cause* an otherwise valid *claim to be denied.*"

(emphasis added). Such tentative language cannot be interpreted as incorporating the application statements as warranties. *See, e.g., Lane,* 391 S.W.2d at 402.

**3.** *See, e.g., Odom v. Insurance Co. of Penn.,* 455 S.W.2d 195 (Tex.1970) (holding statements made by insured in application for automobile liability insurance, attached to and made a part of the policy, created warranties and insured was bound by misstatements in application); *Texas State Mut. Fire Ins. Co. v. Richbourg,* 257 S.W. 1089, 1091–92 (Tex.Comm'n App.1924, judgm't adopted) (holding certain statements made by insured in application for fire insurance were properly made warranties in the policy and insured's ignorance of falsity of statements would not prevent avoidance of contract); *see also Washington v. Reliable Life Ins. Co.,* 581 S.W.2d 153, 160 (Tex.1979) (distinguishing *Odom* ); *First Continental Life & Accident Co. v. Bolton,* 524 S.W.2d 727, 730 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

Indeed, many of the cases relied upon by *Inter–Ocean Ins. Co. v. Ross,* 315 S.W.2d 71 (Tex.Civ. App.—Fort Worth 1958, no writ), overruled by the Court's opinion to the extent it may be read to allow avoidance of a policy of insurance based upon a misrepresentation defense without a finding of intent to deceive, are actually "condition cases" or "warranty cases," which properly do not require proof of an intent to deceive.

Therefore, I conclude that the Court has reached the correct judgment both under article 3.70–3(A)(2)(a) and, regardless of the statute, under the particular facts of this case.

## II.

Because I am persuaded that there is some evidence of bad faith on the part of Union Bankers on the record before us, I also agree with the Court that a remand to the trial court on that issue is appropriate. In the trial court, however, Union Bankers may argue that, as a matter of law, it did not act in bad faith by asserting what our opinions today reveal to be a tenable, although incorrect, legal position. Because Union Bankers does not raise the argument here, it is not our responsibility to determine whether the evidence below is, as a matter of law, "such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim, and that it knew or should have known it had no reasonable basis for its actions." *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex. 1993).

CORNYN, Justice, joined by GONZALEZ and HECHT, JJ., concurring and dissenting.

I join Part I but not Part II of CHIEF JUSTICE PHILLIPS's concurring opinion and in the court's judgment, except the decision to remand this case for a new trial on the duty of good faith and fair dealing. I do not join in the plurality opinion. While I have no quarrel with the plurality's conclusion that the bad faith cancellation of an insurance policy should not be treated differently from an insurer's bad faith nonpayment of a claim, there is no evidence of bad faith cancellation in this case and, thus, a remand is not justified.

I note that the plurality relegates to a footnote the fact that the majority of states hold that "proof of an intent to deceive is not required to avoid a policy of insurance based upon a misrepresentation," 889 S.W.2d at 282 n. 9. The same footnote also notes that "some treatises and courts" have not found Texas law to be particularly clear on this issue. *Id.* Because of this, I think it is

necessary to address the issues CHIEF JUSTICE PHILLIPS reaches in Part I of his concurring opinion, distinguishing between misrepresentations and warranties.

## I

The plurality is just plain wrong to say "[w]ithout a cause of action for breach of the duty of good faith and fair dealing . . . insurers [can] . . . arbitrarily den[y] coverage . . . with no more penalty than interest on the amount owed." 889 S.W.2d at 283 (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987)). This statement is no more true today than it was when it first was made. To the contrary, even if an insurer that denies a claim prevails at trial, it must pay the costs of its own defense. If the insured prevails, the insurer must pay not only prejudgment interest, but also the insured's reasonable attorneys' fees. TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001–38.006 (Vernon 1986); *see also id.* § 38.006 (and statutes cited therein); *Prudential Ins. Co. of Am. v. Burke*, 614 S.W.2d·847, 850 (Tex.Civ.App.—Texarkana 1981), *writ ref'd n.r.e.*, 621 S.W.2d 596 (Tex.1981) (per curiam); *American Gen. Fire & Casualty Co. v. McInnis Book Store, Inc.*, 860 S.W.2d 484, 490–91 (Tex.App.—Corpus Christi 1993, no writ); *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett*, 698 S.W.2d 271, 278 (Tex. App.—Fort Worth 1985, no writ); *Vanguard Ins. Co. v. McWilliams*, 680 S.W.2d 50, 52 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 575 (Tex.App.—Houston [14th Dist.] 1983), *rev'd in part on other grounds*, 704 S.W.2d 742, 745 (Tex.1986); *Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *Aetna Fire Underwriters Ins. Co. v. Southwestern Eng'g Co.*, 626 S.W.2d 99, 103 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.) (the purpose of TEX.CIV. PRAC. & REM.CODE § 38.006 is to prevent double recovery of attorneys' fees when they are recoverable under another statute); *but see Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex.1983). Further, an insurer may face statutory penalties for improper claims handling. *See, e.g.*, TEX.

INS.CODE ANN. arts. 21.21, 21.55 (Vernon 1981 & Supp.1994). Liability for such additional sums, over and above policy benefits, may reasonably be expected to deter even "repeat-players" in litigation, like insurance carriers, from arbitrarily denying benefits under a policy. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d at 26 n. 21.

## II

A cause of action for breach of the duty of good faith and fair dealing is stated when an insured alleges that the insurer had no reasonable basis for the denial or delay in payment of a claim and that the insurer knew or should have known that fact. *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 599 (Tex.1993); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988). Carriers must maintain the right to deny invalid or questionable claims and not be subject to bad faith liability for an erroneous denial of a claim. *Id.* The standard we apply in determining whether there is "no evidence" of bad faith is the same standard trial courts apply in ruling on motions for directed verdict and for judgment notwithstanding the verdict [1]— whether the evidence presented, viewed in the light most favorable to the verdict or non-movant, and entertaining every reasonable inference in favor of the verdict or non-movant, is such as to "permit the logical inference that the jury must reach." *Transportation Ins. Co.,* 879 S.W.2d at 24; *Lyons,* 866 S.W.2d at 600.

There must necessarily be a logical connection, direct or inferential, between the evidence offered and the fact to be proved. *Id.* In addition, the proffered evidence must "ris[e] to a level that would enable reasonable and fair-minded people to differ in their

conclusions." *Transportation Ins. Co.,* 879 S.W.2d at 25. A piece of evidence that does not "make a fact that is of consequence to the determination of the [bad faith] action more or less probable," is not material to the issue of bad faith, and is therefore "no evidence." *Transportation Ins. Co.,* 879 S.W.2d at 24–25; *see* TEX.R.CIV.EVID. 401.

The plurality cites three pieces of evidence as "some evidence" of bad faith: Union Bankers' initial correspondence with Shelton, its failure to discuss the claim with Shelton before making a determination to deny the claim, and the language on the first page of the policy. I start with the third piece of evidence. Whether the face of the policy mentioned all or only one of Union Bankers' remedies for a misrepresentation does not have any bearing on the question of bad faith. This fact makes it neither more nor less probable that Union Bankers had a reasonable basis for invoking some remedy.

Second, whether Union Bankers talked to Shelton before making its determination is relevant only to the "knew or should have known" element of bad faith. Whether Union Bankers "should have known" it lacked any reasonable basis is only an issue if there is evidence that Union Bankers *in fact* lacked a reasonable basis. If Union Bankers had a reasonable basis for testing Shelton's claim in court, and talking to Shelton would not have eliminated that reasonable basis,[2] then failure to talk to Shelton is not evidence of an absence of a reasonable basis. *National Union Fire Ins. Co.,* 873 S.W.2d at 376–77.

Only after an appellate court has determined what potential basis an insurance company may have had for denying a claim can the court conduct a meaningful review of

1. Although Union Bankers may also be able to claim it was entitled to go to court on the basis of a "tenable, but incorrect, legal position," *see* 889 S.W.2d at 286 (Phillips, C.J., concurring), the case should be decided on "no evidence" grounds. Because Union Bankers had a reasonable basis to challenge Shelton's claim, i.e., that Shelton intentionally misrepresented his physical condition, as a matter of law Union Bankers could not have acted "without any reasonable basis." *National Union Fire Ins. Co. v. Dominguez,* 873 S.W.2d 373, 376–77 (Tex.1994).

2. No evidence appears in the record that Union Bankers would have discovered, upon talking to Shelton, that it lacked a reasonable basis for cancelling coverage. Therefore, the absence of discussion is not evidence of bad faith. *See National Union Fire Ins. Co.,* 873 S.W.2d at 377 ("While that letter is some evidence of coverage it is not evidence of an absence of a reasonable basis.... Dominguez presented no evidence that casts doubt on National Union's reliance on the medical professionals who diagnosed the condition, or on Dominguez' own statements on insurance forms....").

whether the insured has presented sufficient evidence that the insurer lacked a reasonable basis for denying or delaying the claim. *Id.* at 376. Union Bankers presented a genuine fact issue concerning Shelton's intent to deceive,[3] and therefore Union Bankers did no more than insist upon a judicial determination of its liability under the terms of Shelton's policy. Proof that its version of the facts and interpretation of the applicable law did not ultimately prevail, without more, is no evidence that Union Bankers had no "reasonable basis" for testing Shelton's claim in court. *Transportation Ins. Co.,* 879 S.W.2d at 31; *National Union Fire Ins. Co.,* 873 S.W.2d at 376 ("As we held in *Lyons,* evidence of insurance coverage alone does not go to the issue of the standard articulated in *Aranda,* absence of a reasonable basis....").

Finally, the initial correspondence between Union Bankers and Shelton indicates only that Union Bankers was willing to give Shelton the benefit of the doubt until it finished its investigation. An initial statement that Shelton's omission was "probably an oversight," is not evidence that the ultimate decision to rescind the contract and refund collected premiums was made without any reasonable basis.

While the evidence does not conclusively establish that Shelton had an intent to deceive, it certainly does establish that Union Bankers had a reasonable basis to challenge Shelton's claim. Shelton has not introduced a scintilla of evidence to indicate that Union Bankers lacked a reasonable basis, and so on this ground I respectfully dissent.

---

3. The record reveals considerable evidence from which *the jury could have concluded that Shelton intended to deceive his insurer.* Although his wife was insured, Shelton went without insurance for several years. Less than six months after purchasing his policy with Union Bankers, Shelton sought medical attention for his condition. Two months after that, Shelton elected to undergo surgery because the pain in his knee had become so severe that he could no longer work. Prior to surgery, he informed one of his doctors that he had experienced discomfort and pain for "the last five years." Although the jury elected not to do so, it certainly could have concluded that Shelton decided he would no longer self-insure at precisely the time when he anticipated large medical bills. This "adverse selection" behavior of insureds who pay premiums only when a loss is virtually certain is precisely the behavior that policy questionnaires are designed to combat.